**In re ENTERPRISE MORTGAGE ACCEPTANCE CO., LLC, SECURITIES LITIGATION**

**Great Southern Life Insurance Company, Plaintiffs,**

v.

**Enterprise Mortgage Acceptance Company, LLC, Kenneth A. Saverin, Jeffrey J. Knyal, Charlene S. Chai, Koch Capital Services, Inc., Koch Industries, Inc., and Jeffrey R. Thompson, Defendants.**

**Aetna Life Insurance Company, Plaintiffs,**

v.

**Enterprise Mortgage Acceptance Company, LLC, Kenneth A. Saverin, Jeffrey J. Knyal, Charlene S. Chai, Sean A. Stalfort, Koch Capital Services, Inc., Koch Industries, Inc., and Jeffrey R. Thompson, Defendants.**

Nos. 03 Civ. 3752–SWK, 03 Civ. 3707SWK.

United States District Court, S.D. New York.

Nov. 14, 2003.

Beth D. Jacob, Schiff, Hardin & Waite, New York, NY, for Plaintiff.

Daniel Philip Waxman, Eva L. Jerome, George B. Yankwitt, Bryan Cave LLP, Paul Dutka, Weil, Gotshal & Manges, Anthony M. Radice, Mark David McPherson, Morrison & Foerster, L.L.P., New York, NY, for Defendants.

KRAM, District Judge.

Plaintiffs Aetna Life Insurance Company ("Aetna") and Great Southern Life Insurance Company ("Great Southern") have sued Defendants Enterprise Mortgage Acceptance Company, LLC ("EMAC"), Kenneth A. Saverin, Charlene Chai, Sean A. Stalfort,[1] and Jeffrey J. Knyal, (collectively the "Individual EMAC Defendants"), Koch Industries, Inc. and Koch Capital Services,

1. Sean A. Stalfort is not a defendant in the    Great Southern complaint.

LLC (together, "Koch") and Jeffrey R. Thompson ("Thompson") for securities fraud. Plaintiffs allege defendants made false and materially misleading statements and omissions regarding EMAC's lending practices in violation of Sections 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b) and SEC Rule 10b–5, promulgated thereunder, 17 C.F.R. § 240.10b–5, and Section 20(a) of the 1934 Act. 15 U.S.C. § 78t(a).

All of the defendants have moved to dismiss plaintiffs' complaints, pursuant to Fed.R.Civ.P. 12(b)(6), Fed.R.Civ.P. 9(b), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. 78u–4(b)(2). EMAC filed its own motion to dismiss.[2] Knyal and Thompson each filed their own motions to dismiss. Koch filed its own motion to dismiss. Saverin and Chai filed a joint motion to dismiss.[3] All defendants argue that the extension of the statute of limitations for Section 10(b) claims under Section 804 of the Public Company Accounting Reform and Investor Protection Act of 2002 ("Sarbanes–Oxley") does not revive plaintiffs' previously time-barred claims.

## I. BACKGROUND

### A. Procedural Background

Great Southern filed its original complaint on June 14, 2002 and Aetna filed its original complaint on June 12, 2002. In Aetna's original complaint it asserted federal securities claims concerning its 1998, 1999, and 2000 purchases of securities from EMAC, which sold interests in pools of loans to gasoline stations, car washes,

"quick lube" businesses and convenience stores. In Great Southern's original complaint, it asserted state law claims regarding its 1999 purchases and federal claims regarding its 2000 purchases. On May 22, 2003 Aetna filed a new complaint and on May 23, 2003 Great Southern filed a new complaint. Aetna's new complaint asserts federal claims regarding its 1998 and 1999 purchases of securities from EMAC that were time-barred.[4] Great Southern's new complaint asserts federal securities claims regarding its 1999 purchases that it admits were barred by the statute of limitations before the Sarbanes–Oxley Act (the "Act"), which became effective on July 30, 2002.[5] Plaintiffs argue that since their new complaints were filed in May 2003, after the Act went into effect, the new statute of limitations provided by the Act revives their previously time-barred claims.

### B. Facts

The facts alleged in Aetna's and Great Southern's new complaints are the same as those alleged in their original complaints. For an extensive summary of these facts, refer to Opinion and Order Granting EMAC's Motion to Dismiss Aetna's Complaint, 02 CV 4455(SWK) and Opinion and Order Granting in Part and Denying in Part EMAC's Motion to Dismiss Great Southern's Complaint, 02 Civ. 4653(SWK).

## II. DISCUSSION

### A. Applicable Legal Standards

Under Rule 12(b)(6), a complaint will be dismissed if there is a failure "to state a

---

2. All defendants joined in the motion to dismiss filed by EMAC.

3. Sean A. Stalfort also joined in Chai's and Saverin's motion to dismiss, however, he is not a defendant in the Great Southern action.

4. Aetna had previously withdrawn its 1998 and 1999 claims because they admitted that they were barred by the one-year/three-year statute of limitations before Sarbanes–Oxley went into effect.

5. Great Southern also admits that its claims regarding its 1999 purchases were time barred by the one-year/three-year statute of limitations.

claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In order to prevail on a motion to dismiss, the moving party must demonstrate "beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984). A court must take the factual allegations of the non-moving party's pleadings as true and construe them in the light most favorable to that party. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985).

On a Rule 12(b)(6) motion, the Court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor,* 220 F.3d 81, 88–89 (2d Cir.2000) (citations omitted).

To state a cause of action for securities fraud under Section 10(b)[6] and Rule 10b–5,[7] a plaintiff must adequately plead the following elements: (1) damage to plaintiff; (2) caused by reliance on defendant's mis-representations or omissions of material facts, or on a scheme by defendant to defraud; (3) made with an intent to deceive, manipulate or defraud (scienter); (4) in connection with the purchase or sale of securities; and (5) furthered by defendant's use of the mails in any facility of a national securities exchange. *Manufacturers Hanover Trust Co. v. Smith Barney, Harris Upham & Co., Inc.,* 770 F.Supp. 176, 179 (S.D.N.Y.1991).

A complaint asserting securities fraud must also meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b), which requires fraud to be alleged with particularity. Fed.R.Civ.P. 9(b) ("In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity."); *see also Kalnit v. Eichler,* 264 F.3d 131, 138 (2d Cir.2001). Additionally, securities fraud actions are governed by the PSLRA, which contains its own heightened pleading requirements. The PSLRA states, in relevant part:

(1) Misleading statements and omissions

In any private action arising under this chapter in which the plaintiff alleges that the defendant

(A) made an untrue statement of a material fact; or

---

**6.** Section 10(b) provides it is unlawful:

[t]o use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

**7.** Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

(2) Required state of mind

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b).

Plaintiffs' Section 20(a) control person liability claim is governed by 15 U.S.C. § 78t(a), which states that "every person who ... controls any person liable [for a § 10(b) violation] ... shall also be liable jointly and severally with and to the same extent as such controlled person."

■■■ Before the enactment of the Sarbanes–Oxley Act on July 30, 2002, the statute of limitations for claims under Section 10(b) and Rule 10b–5 was "within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(e); *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991); *Newman v. Warnaco Group, Inc.,* 335 F.3d 187, 193 (2d Cir.2003). The one-year limitations period commenced after the plaintiff "obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Kahn v. Kohlberg, Kravis, Roberts & Co.,* 970 F.2d 1030, 1042 (2d Cir.1992). Moreover, "when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises." *Dodds v. Cigna Secs., Inc.,* 12 F.3d 346, 350 (2d Cir.1993). In assessing whether a plaintiff should have been put on inquiry notice, courts generally examine whether any financial, legal, or other data, including public disclosures in the media about the financial condition of the corporation, available to the plaintiff trigger sufficient warnings to alert a reasonable investor of the probability of fraud. *Newman,* 335 F.3d at 193; *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.,* 2003 WL 21088506, *3 (S.D.N.Y. May 14, 2003). The circumstances that give rise to a duty of inquiry are often called "storm warnings." *Dodds,* 12 F.3d at 350. Whether the securities fraud claim of a plaintiff who receives "storm warnings" is barred by the statute of limitations "turns on when, after obtaining inquiry notice," the plaintiff "in the exercise of reasonable diligence, should have discovered the facts underlying the [defendant's] alleged fraud." *Rothman v. Gregor,* 220 F.3d 81, 97 (2d Cir.2000).

Section 804 of the Sarbanes–Oxley Act charges the applicable 1–year/3–year statute of limitations. It allows plaintiffs to bring a securities fraud action not later than the earlier of 2 years after the discovery of the facts constituting the violation or 5 years after such violation. The principles discussed above still apply to the new limitations period. The relevant part of Section 804 states:

(a) [ ] a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section

3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of—
> (1) 2 years after the discovery of the facts constituting the violation; or
> (2) 5 years after such violation.

(b) EFFECTIVE DATE.—The limitations period provided by section 1658(b) of title 28, United States Code, as added by this section, shall apply to all proceedings addressed by this section that are commenced on or after the date of enactment of this Act.

(c) NO CREATION OF ACTIONS.—Nothing in this section shall create a new, private right of action.

Public Company Accounting Reform and Investor Protection Act of 2002, Pub.L. No. 107–204 § 804, 116 Stat. 745, 801, codified in part at 28 U.S.C. § 1658(b).

### B. EMAC's Motion to Dismiss

EMAC argues that the two-year/five-year limitations period provided in Sarbanes–Oxley does not apply to plaintiffs' claims that would have been time-barred by the former one-year/three-year limitations period. The Court agrees.

### 1. Congress Did Not Clearly Intend the Sarbanes–Oxley Act to Revive Previously Time–Barred Claims.

■ The United States Supreme Court has stated that there is a three-step test in deciding whether a statute that is enacted after the events in suit should apply. First, the court must determine whether "Congress has expressly proscribed the statute's proper reach." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). If Congress has clearly set out the statute's reach then there is no need to consult judicial default rules. Second, when a statute contains no express command re-

garding its scope, the court must determine whether the statute has an impermissible retroactive effect. *Id.* The *Landgraf* Court explained that if a statute would "impair the rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," then there is a presumption that the statute does not govern events in suit that occurred before its enactment. *Id.* The Court further explained that "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity" because parties have diminished interests in procedural matters, and because rules of procedure regulate secondary rather than primary conduct. *Id.* at 275. Third, if the court finds that Congress has not expressly prescribed the statute's proper reach and that the statute impairs rights of a party, the statute enacted after the events in suit will not apply unless Congress expresses a clear intention that the legislation is retroactive or revives stale claims. *Id.* at 280, 114 S.Ct. 1483.

■ Plaintiffs first argue that because Section 804(a) states that the new statute of limitations "shall apply to all proceedings ... that are commenced on or after the date of the enactment of the Act," Congress expressly stated that Section 804 revives previously time-barred claims. The Court disagrees.

First, there is no clear language in the statute stating that it applies retroactively or that it operates to revive time-barred claims. *See Roberts v. Dean Witter Reynolds, Inc.*, 2003 WL 1936116 at *3 (M.D.Fla. Mar.31, 2003) (explaining that Congress did not use the phrase "retroactive application" in the statute itself and that Congress did not expressly prescribe the temporal reach of the statute);[8] *see*

---

8. However, in *Roberts,* the Court decided Section 804 revives already time-barred claims

because it held that the legislative history

*also Glaser v. Enzo Biochem, Inc.,* —— F.Supp.3d ——, ——, 2003 WL 21960613, *5, 2003 U.S. Dist. LEXIS 14121 at *15–*16 (E.D.Va. July 16, 2003) (holding "Congress did not unambiguously provide that the [new] limitations period [in Section 804] would apply retroactively" and that Section 804 does not revive already time-barred claims). If Congress wanted Section 804 to clearly revive time-barred claims, it could have used the unambiguous language it had used in previous statutes that revived formerly time-barred claims. *See, e.g.,* Riegle–Neal Interstate Banking and Branching Efficiency Act of 1994, Pub.L. No. 103–328, 201, 108 Stat. 2338 (1994) (amending FIRREA to state "the corporation may bring an action as conservator or receiver on [state law claims] without regard to the expiration of the statute of limitations applicable under State law").

Second, Section 804(c) states: "Nothing in this section shall create a new, private right of action." This subsection appears to directly conflict with the contention that Section 804 allows for the revival of time-barred claims because the assertion of a claim that was previously barred can be construed as a new, private right of action. *See Hughes Aircraft Co. v. United States, ex rel. Schumer,* 520 U.S. 939, 950, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (holding that a statute that eliminates a prior defense to a qui tam action creates a new cause of action). Accordingly, it is not clear from the language of Section 804 that it permits the revival of previously time-barred claims. *See United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984) ("We do not, however, construe statutory phrases in isolation; we read statutes as a whole.").

Plaintiffs argue next that the Second Circuit's decision in *Vernon v. Cassadaga Valley Central School District,* 49 F.3d 886 (2d Cir.1995) controls this case and requires the application of the lengthened statute of limitations in Section 804 to revive plaintiffs' formerly time-barred claims. In *Vernon,* various high school teachers alleged that the local school district and officials impermissibly discriminated against them in violation of the Age Discrimination in Employment Act ("ADEA"). At the time of the alleged discrimination, the statute of limitations was two years. Subsequently, Congress amended the statute of limitations to require that ADEA actions be filed within ninety days of a complainant's receipt of a "right-to-sue" letter from the Equal Employment Opportunity Commission ("EEOC"). Plaintiffs received right-to-sue letters that informed them of this amendment, but they did not file suit within the ninety-day limitations period.

The *Vernon* Court held that the new, shorter statute of limitations should be applied to plaintiffs' claims. The Court explained that this statute of limitations was procedural because the "conduct to which the statute of limitations applies is not the primary conduct of the defendants, the alleged discrimination, but is instead the secondary conduct of the plaintiffs, the filing of their suit." *Vernon,* 49 F.3d at 890. The Court then stated that the newly enacted shortened statute of limitations in this particular case "impaired no rights possessed by either party, ... increased neither party's liability, nor imposed any new duties with respect to past transactions." *Id.* Thus, the Court found that the newly enacted shortened statute of limitations did not have an impermissible retroactive effect.

Plaintiffs argue this case is exactly like *Vernon.* They claim a lengthened statute of limitations under Section 804 that revives time-barred claims is merely a proce-

demonstrates that Congress clearly intended to resurrect previously time-barred claims.

dural rule, and therefore the Court must interpret Section 804 to revive time-barred claims. The Court disagrees.

In Judge Cabranes' concurrence in *Vernon*, he explained that the characterization of the statute of limitations as a "procedural" rule could produce unfair results in some situations. *Id.* at 891. He explained that in *Vernon* it was not unjust to apply the newly enacted shortened limitations period to plaintiffs' claims "because applying the new period did not threaten any reliance interests the retroactivity doctrine is meant to protect." *Id.* Plaintiffs in *Vernon* had the full benefit of the new 90–day limitations period when they received their right-to-sue letters.

Judge Cabranes stated that he was more concerned about a situation where a statute of limitations has started to run, but is then replaced by a new shorter limitations period. *Id.* He argued that the a new shortened statute of limitations period should not apply to plaintiffs who have not had a chance to comply with the new shorter limitations period unless Congress clearly intends for the shorter limitations period to apply. *Id.* Judge Cabranes further explained that "[because] statutes of limitations create important reliance interests, govern whether or not an individual can vindicate a right, and prevent a court from deciding stale claims, they lie on the cusp of the procedural/substantive distinction." *Id.* at 892. He concluded that "we should not let the mere characterization of a statute of limitations as procedural pave the way to a determination that applying it retroactively is necessarily permissible." *Id.*

Although Judge Cabranes did not address the exact issue in the instant case, *i.e.* whether a newly enacted statute that lengthens a statute of limitations should operate to revive already time-barred claims, his logic applies equally to this case. When a new statute of limitations

revives time-barred claims it makes defendants defend against claims that they reasonably rely upon as being extinguished. Applying a newly enacted lengthened statute of limitations to plaintiffs' time-barred claims goes against the policies mentioned by Judge Cabranes, such as preventing the court from deciding stale claims and protecting the parties' reliance interests.

The Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits and the Southern District of New York have all held that allowing a new statute that provides for a longer statute of limitations to revive previously time-barred claims is impermissible unless the legislature clearly expresses the intent to revive already time-barred actions. In *Million v. Frank*, 47 F.3d 385, 390 (10th Cir.1995), the Tenth Circuit explained the rationale of refusing to resurrect plaintiff's time-barred claims in the absence of clear Congressional intent:

> Applying the new time limit would alter the substantive rights of both the plaintiff and the defendant. Plaintiff would be afforded relief where previously there was none to be gained. The defendant would be stripped of his right to raise a valid defense and would be forced to defend an action previously time-barred: defendant's liability would be substantially increased.

*Id.* at 390. The Ninth Circuit's analysis of statutes that revive time-barred claims in *Chenault v. United States Postal Serv.*, 37 F.3d 535 (9th Cir.1994) was similar to the explanation in *Million:*

> [A] newly enacted statute that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme because to do so would 'alter the substantive rights' of a party and 'increase a party's liability.' In this case

the rights of the defendant would be altered and its liability increased because it would be forced to defend an action that was previously time-barred. *Id.* at 539.[9]

Further, in *Hughes Aircraft Co. v. United States, ex rel. Schumer,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), the United States Supreme Court quoted in dicta [10] *Chenault's* holding that a statute that expands the statute of limitations does not revive time-barred claims. *Hughes,* 520 U.S. at 950, 117 S.Ct. 1871 (explaining that *Chenault* relied on *Landgraf* and that the *Chenault* Court concluded " 'a newly enacted statute that lengthens the applicable statute of limitations may not be ap-plied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme because to do so would 'alter the substantive rights' of a party and 'increase a party's liability.' "). Plaintiffs point out that the Sixth Circuit came to the opposite conclusion as the holdings of the Fifth, Eighth, Ninth, Tenth and Eleventh circuits and held that a newly enacted statute that extends a statute of limitations should be interpreted to revive previously time-barred claims. *Forest v. U.S. Postal Service,* 97 F.3d 137, 140 (6th Cir.1996).[11] However, this Court finds the decisions of the Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits and the Southern District of New York, the rea-

---

9. *See also Ks. Pub. Employees Ret. Sys. v. Reimer & Kroger Assocs., Inc.,* 61 F.3d 608, 615 (8th Cir.1995) ("The legislature has the power to revive actions barred by a statute of limitations if it specifically expresses its intent to do so through retroactive application of a new law."); *Resolution Trust Corp. v. Artley,* 28 F.3d 1099, 1103 n. 6 (11th Cir.1994) ("FIRREA does not provide a clear enough statement that RTC's appointment permits the bringing of claims which, under analogous state causes of action, would have been barred."); *FDIC v. Belli,* 981 F.2d 838, 842–43 (5th Cir.1993) (applying a statute lengthening the statute of limitations retroactively to pending cases except when it would revive an expired claim); *United States ex rel. Thistlethwaite v. Polymer,* 6 F.Supp.2d 263, 265 (S.D.N.Y.1998) ("[A] lengthened statute of limitations is 'procedural'—that is, it does not alter substantive rights—and can be applied to pre-existing claims as long as the new statute does not revive claims already barred.").

10. In *Hughes,* plaintiff brought an action against Hughes Aircraft Company pursuant to the qui tam provision of the False Claims Act ("FCA"), which allowed private individuals to bring claims on behalf of the government against anyone who knowingly presented false or fraudulent claims to the government. *Hughes,* 520 U.S. at 941, 117 S.Ct. 1871. Prior to 1986, these suits were barred if the information on which they were based was already in the Government's possession. *Id.*

The issue in the case was whether a 1986 amendment to the FCA partially removing that bar applied retroactively to qui tam suits regarding allegedly false claims submitted prior to its enactment. The Court held that the amendment did not renew plaintiff's previously barred qui tam action and analogized the *Hughes* case to reviving previously time-barred claims:

> In permitting actions by an expanded universe of plaintiffs with different incentives, the 1986 amendment essentially creates a new cause of action, not just an increased likelihood that an existing cause of action will be pursued.... Prior to the 1986 amendment, respondent's qui tam action was completely barred because of Hughes' disclosure to the Government of information about its claim submissions. The 1986 amendment would revive that action, subjecting Hughes to previously foreclosed qui tam litigation, much like extending a statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action.... It is simply not the case that, as respondent asserts, the elimination of a prior defense to qui tam actions does not create a new cause of action or change the substance of the extant cause of action.

*Id.* at 950, 117 S.Ct. 1871 (internal quotations omitted).

11. *Forest* was decided one year before *Hughes.*

soning of Judge Cabranes' concurrence in *Vernon*, and the Supreme Court's dicta in *Hughes* to be more persuasive than the Sixth Circuit's decision in *Forest*. Accordingly, the lengthened statute of limitations in Section 804 of the Sarbanes–Oxley Act does not permissibly revive already time-barred claims absent Congress' clear intent to the contrary.

To determine whether Congress clearly intended Section 804 to revive previously time-barred claims, it is necessary to consider the legislative history. In *Roberts v. Dean Witter Reynolds, Inc.*, 2003 WL 1936116 (M.D.Fla. Mar.31, 2003), the Court held that the legislative history demonstrated Congress' clear intent to revive formerly time-barred actions. The *Roberts* Court mainly based its conclusion on floor statements made by Senator Leahy and on a "section-by section analysis" of the Act.

Senator Leahy made many statements regarding the plight of investors who lost money and were defrauded as a result of major corporate scandals, such as Enron, and he said that an extension of the statute of limitations was needed to permit innocent investors to "recover some of the money they have lost" as a result of these scandals. 2003 WL 1936116, at *3. Further, Mr. Leahy emphasized that his home state of Vermont lost millions of dollars and explained: "Even in my own little State of Vermont, pension funds were damaged because of the excesses of Enron. And then we see WorldCom and Tyco and Xerox, and we say we had better look back 5 years." 148 Cong. Rec. S6540 (July 10, 2002).

However, none of Senator Leahy's statements referred to reviving time-barred claims nor did he make any statements that clearly show the Act intended for the resurrection of time-barred claims. In fact, Mr. Leahy actually made one statement that indicated the Act was not intended to revive time-barred claims. During a hearing he stated: "[In the Act] [w]e extend the statute of limitations in security-fraud cases—something that would've helped so many people who were defrauded by Enron and others." Conference Report on Corporate Responsibility Legislation: Hearing on H.R. 3763 before Conference Comm., 107th Cong. at 12 (2002) (statement of Senator Leahy). Additionally, Senator Gramm made statements indicating that the Act does not revive time-barred claims. In response to Senator Durbin's assertion that the one-year/three-year statute of limitations permitted some corporate officers to "get off the hook," Mr. Gramm said:

> When the Senator was talking about letting people off the hook, surely everybody understands that our system has no ex post facto laws. So if the provision raising the statute of limitations to 5 years became law, it would have no effect on anybody who has committed one of these violations about which we are talking.

148 Cong. Rec. S6537 (July 10, 2002). Consequently, the statements of Mr. Leahy and Mr. Gramm do not show that Congress clearly intended the Act to revive already time-barred claims.

The "section-by section analysis" of the Act, which was included in the Congressional Record by unanimous consent of the Senate also does not show Congress clearly meant to revive time-barred claims. The *Roberts* Court emphasized the following portion of the section-by section analysis to support its holding that Congress clearly intended to revive time-barred claims:

> This provision is intended to lengthen any statute of limitations under federal securities law, and to shorten none. The section, by its plain terms, applies to any and all cases filed after the effective

date of the Act, regardless of when the *underlying conduct occurred.*

2003 WL 1936116, at *3 (quoting 148 Cong. Rec. S7418–01, *7418) (emphasis in the original). Once again, there is no clear language of revival in either of these two sentences in the section-by section analysis. The first sentence may be read to mean that Congress only applied the Act's extended statute of limitations to existing claims not already time-barred. The second sentence may be interpreted to state that even if a claim is brought after the Act is effective, the expanded statute of limitations can reach conduct that happened not only after the enactment of the Act, but also before its enactment. Accordingly, because the language and legislative history of the Sarbanes–Oxley Act does not show Congress clearly intended to apply the lengthened statute of limitations in Section 804 to already time-barred claims, plaintiffs' claims are dismissed.[12]

### III. CONCLUSION

For the reasons set forth above, all defendants' motions to dismiss are granted.

SO ORDERED.

---

12. Because the Court finds that the extended statute of limitations in the Sarbanes–Oxley Act does not apply to plaintiffs' claims, it *declines to address EMAC's other arguments* for dismissal. Further, EMAC's arguments apply to all other defendants' motions to dismiss, and therefore Chai's, Stalfort's, Saverin's, Knyal's, Thompson's, and Koch's motions to dismiss are granted.