## In re ADC TELECOMMUNICATIONS, INC. SECURITIES LITIGATION

### No. CIV. 03–1194 JNEJGL.

United States District Court,
D. Minnesota.

May 17, 2004.

Seth Ottensoser, New York City, Carolyn Anderson, Minneapolis, MN, and Peter Binkow, Esqs. Los Angeles, CA, of Plaintiffs.

Peter Carter, John Rock, and Mitchell Granberg, Esqs. Minneapolis, MN, of Defendants.

## ORDER

ERICKSEN, District Judge.

This case is before the Court on a Report and Recommendation issued by the Honorable Jonathan G. Lebedoff, Chief United States Magistrate Judge, on April 13, 2004. The Magistrate Judge recommended that Defendants' Motion to Dismiss the Consolidated, Amended Complaint be granted. The Court has received Plaintiffs' objections to the Report and Recommendation and Defendants' response to those objections. Based on a de novo review of the record, the Court adopts the Report and Recommendation. Therefore, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss the Consolidated, Amended Complaint [Docket No. 50] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## REPORT AND RECOMMENDATION

LEBEDOFF, Chief United States Magistrate Judge.

The above-entitled matter came before the undersigned Chief Magistrate Judge of District Court on March 17, 2004 on Defendants' Motion to Dismiss the Consolidated, Amended Complaint (Doc. No. 50). The case has been referred to the undersigned for a Report and Recommendation per the Order of Reference by the District Court.

## I. INTRODUCTION

This is a securities fraud class action brought on behalf of purchasers of ADC securities from August 17, 2000 through March 28, 2001. Defendant ADC is a global supplier of fiber optics, network equipment, software, and system integration services for broadband, multiservice networks. Defendant William Cadogan was ADC's Chairman, President, and Chief Executive Officer until February 2001. Defendant Robert W. Switz was ADC's Senior Vice President and Chief Financial Officer during the class period. Plaintiffs are suing Defendants under Sec-

tions 10(b) and 20(a) of the Securities Exchange Act of 1934 for allegedly disseminating materially false and misleading statements to the investing public.

On a motion to dismiss, the Court "must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles,* 244 F.3d 623, 627 (8th Cir.2001) (citing *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir.1996)). A case should be dismissed only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Here, Plaintiffs are the nonmoving party.

## II. DISCUSSION

■ Defendants move to dismiss Plaintiffs' consolidated, amended complaint on several grounds, the first of which is that Plaintiffs' claims are barred by the applicable statute of limitations. Section 13 of the 1933 Securities Act provides that a federal securities fraud action must be brought within one year following the discovery of the untrue statement or omission giving rise to the claim. 15 U.S.C. § 77m; *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (holding that actions asserting claims based on § 10(b) and Rule 10b–5 must be initiated within a year of discovering the facts establishing the violation); *Theoharous v. Fong,* 256 F.3d 1219, 1228 & n. 12 (11th Cir.2001) (applying the statute of limitations for § 10(b) claims to § 20(a)

claims); *Dodds v. Cigna Sec., Inc.,* 12 F.3d 346, 350 n. 2 (2d Cir.1993) (same). In the complaint, Plaintiffs allege that Defendants engaged in a fraudulent scheme to artificially inflate ADC's stock price by making several materially false and misleading statements during the class period. (Compl.¶ 3.) The class period ended on March 28, 2001, the date on which ADC issued a press release contradicting its earlier projections and forecasts. (*Id.* ¶ 119.) The complaint specifically alleges that ADC finally disclosed "the truth" about its financial results and projections on this date.[1] (*Id.* ¶ 13.) The first complaint in this consolidated action was filed on February 26, 2003, which is more than a year after March 28, 2001.

Plaintiffs do not dispute Defendants' contention that the date from which to measure the limitations period is March 28, 2001. However, they have directed the Court to Section 804 of the Sarbanes–Oxley Act of 2002 ("the Act"), which extended the statute of limitations for securities fraud from one year to two years from the discovery of facts constituting the violation. Pub.L. No. 107–204, § 804, 116 Stat. 745, 801 (2002) (to be codified as amended at 28 U.S.C. § 1658(b)(1)). The new limitations period applies to actions commenced on or after the date of the enactment of the Act. *Id.* According to Plaintiffs, the Sarbanes–Oxley Act revives their claims because they commenced this action within two years after discovering the facts constituting the alleged violations. Plaintiffs' claims were time-barred as of March 28, 2002 under the previous statute of limitations. The Sarbanes–Oxley Act was enacted on July 30, 2002. Defendants contend that the revised stat-

---

1. The press release announced that sales and pro forma earnings per share for the second quarter of 2001 would be lower than expected. (*Id.* ¶ 114.) The press release further stated that ADC expected the pro forma diluted loss per share for the same period to be approximately $0.10 to $0.15 per share, which was greater than what was stated in previous press releases. (*Id.* ¶ 115.) After the press release was issued, ADC's stock price dropped 22%. (*Id.* ¶ 119.)

ute of limitations does not apply to claims already barred by the previous statute of limitations at the time the Act was enacted.

The majority of courts addressing this issue have found that the Sarbanes–Oxley Act does not revive claims which expired under the previous, one-year statute of limitations. *See In re Enter. Mortgage Acceptance Co., LLC, Sec. Litig.*, 295 F.Supp.2d 307, 312–17 (2003) (dismissing plaintiffs' claims because Congress did not intend for the Act to revive previously time-barred action); *In Re Heritage Bond Litig.*, 289 F.Supp.2d 1132, 1148 (C.D.Cal. 2003) (finding the Act did not apply to § 10(b) and § 20(a) claims already barred at the time of the Act's enactment); *In re Enron Corp. Sec. Derivative & "Erisa" Litig.*, No. MDL–1446, Civ.A.H–01–3624, 2004 WL 405886, at *17 (S.D.Tex. Feb. 25, 2004) (holding that because the Act lacked an expression of specific intent to apply retroactively, the extended limitations period did not revive claims); *Glaser v. Enzo Biochem, Inc.*, 303 F.Supp.2d 724, 733 (E.D.Va.2003) (finding the Act did not revive action because Congress did not specifically provide for retroactive application of the new statute of limitations). Only the Middle District of Florida has held that the Act revives claims time-barred prior to its passage. *See Roberts v. Dean Witter Reynolds, Inc.*, No. 8:02–CV–2115–T–26EAJ, 2003 WL 1936116, at *2–3 (M.D.Fla. Mar. 31, 2003); *In re Sawtek, Inc. Sec. Litig.*, No. 6:03–CV–294–Orl–31DAB, slip op. at 8 (M.D.Fla. Dec. 19, 2003). No court in the Eighth Circuit has addressed the issue.

■ There is a deeply rooted presumption against retroactive legislation. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Applying legislation retroactively may lead to unfairness by depriving individuals of legitimate expectations and up-

setting settled transactions. *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992), *quoted in Landgraf*, 511 U.S. at 265 n. 18, 114 S.Ct. 1483. The first step in assessing whether the new statute of limitations applies retroactively is to examine the statutory language for an explicit statement of retroactivity or revival by Congress. *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1522. Section 804 of the Sarbanes–Oxley Act provides as follows.

**SEC. 804. STATUTE OF LIMITATIONS FOR SECURITIES FRAUD.**

(a) IN GENERAL—Section 1658 of title 28, United States Code, is amended—

(1) by inserting "(a)" before "Except"; and

(2) by adding at the end the following: "(b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of—

"(1) 2 years after the discovery of the facts constituting the violation; or

"(2) 5 years after such violation.".

(b) EFFECTIVE DATE—The limitations period provided by section 1658(b) of title 28, United States Code, as added by this section, shall apply to all proceedings addressed by this section that are commenced on or after the date of enactment of this Act.

(c) NO CREATION OF ACTIONS— Nothing in this section shall create a new, private right of action.

Pub.L. No. 107–204, § 804.

■ The Court finds that the language of the Act does not contain a clear prescript by Congress for the statute to apply retroactively or to revive previously time-

barred claims. *See In re Enter. Mortgage Acceptance Co., LLC, Sec. Litig.*, 295 F.Supp.2d at 312; *In re Enron Corp. Sec. Derivative & "Erisa" Litig.*, 2004 WL 405886, at *17; *Glaser v. Enzo Biochem, Inc.*, 2003 WL 21960613, at *5. If Congress had intended to revive such claims, it could have used unambiguous language to do so. *See In re Enter. Mortgage Acceptance Co., LLC, Sec. Litig.*, 295 F.Supp.2d at 313; *In re Enron Corp. Sec. Derivative & "Erisa" Litig.*, 2004 WL 405886, at *14 (noting remarks by several commentators that the "Act was passed in such haste that inconsistencies and ambiguities are the result."). To have retroactive effect, the statutory language must be "so clear that it could sustain only one interpretation." *I.N.S. v. St. Cyr*, 533 U.S. 289, 316–17, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (quoting *Lindh v. Murphy*, 521 U.S. 320, 328 n. 4, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). Such language is absent in this case. The statute is silent as to whether it applies retroactively or revives claims that expired under the prior statute of limitations.

■ Because the statute contains no express language prescribing retroactive effect, the court "must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1522. Here, the new statute would have retroactive effect in that it would increase Defendants' liability for past conduct. Under the former statute of limitations, Plaintiffs' claims were time-barred. If Plaintiffs may avail themselves of the new statute of limitations, however, Defendants will be exposed to liability.

Thus, the traditional presumption against retroactivity applies, and the Court turns to the third and final question under *Landgraf* of whether Congress has otherwise expressed a clear intention that the statute should apply retroactively. *Id.* Other courts examining this question have looked to the legislative history of the Act. *See In re Enter. Mortgage Acceptance Co., LLC, Sec. Litig.*, 295 F.Supp.2d at 316; *Roberts*, 2003 WL 1936116, at *3. In this case, both parties cite to comments of Senator Leahy, who authored the relevant portion of the Act. Plaintiffs cite the following: "This provision is intended to lengthen any statute of limitations under federal securities law, and to shorten none. The section, by its plain terms, applies to any and all cases filed after the effective date of the Act, regardless of when the underlying conduct occurred." 148 Cong. Rec. S7418-01 (daily ed. July 26, 2002) (statement of Sen. Leahy). However, this comment merely mirrors the language of the statute. Senator Leahy never indicated an intention to revive time-barred claims or to give the statute retroactive effect. *See In re Enter. Mortgage Acceptance Co., LLC, Sec. Litig.*, 295 F.Supp.2d at 316. On the other hand, the Senator made one comment indicating that the Act would not operate to revive claims: "We extend the statute of limitations in security-fraud cases—something that *would've* helped so many people who were defrauded by Enron and others." Conference Report on Corporate Responsibility Legislation: Hearing on H.R. 3763 before Conference Comm., 107th Cong. at 12 (2002) (statement of Sen. Leahy) (emphasis added), *quoted in In re Enter. Mortgage Acceptance Co., LLC, Sec. Litig.*, 295 F.Supp.2d at 316. And, in fact, the Act did not revive the Enron plaintiffs' claims. *See In re Enron Corp. Sec. Derivative & "Erisa" Litig.*, 2004 WL 405886, at *17.

In addition, Senator Gramm made the following comment about the effect of extending the statute of limitations: "[S]urely everybody understands that our system

has no ex post facto laws. So if the provision raising that statute of limitation ... became law, it would have no effect on anybody who has committed one of these violations about which we are talking." 148 Cong. Rec. S6537 (daily ed. July 10, 2002) (statement of Sen. Gramm). After examining the relevant legislative history, the Court cannot conclude that Congress intended the new statute of limitations to apply retroactively and revive previously time-barred claims. *See, e.g., In re Enter. Mortgage Acceptance Co., LLC, Sec. Litig.,* 295 F.Supp.2d at 317.

Not only is Congressional intent for retroactivity lacking, but § 804(c) provides: "Nothing in this section shall create a new, private right of action." This express statutory language conflicts with Plaintiffs' position that the new statute of limitations revives their claims because the assertion of a previously barred claim can be construed as a new cause of action. *See Hughes Aircraft Co. v. United States, ex rel. Schumer,* 520 U.S. 939, 950, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (refusing to give retroactive effect to an amendment which would revive a *qui tam* action on the basis it would be "much like extending a statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action"); *see also In re Enter. Mortgage Acceptance Co., LLC, Sec. Litig.,* 295 F.Supp.2d at 313.

One final argument of mention by Plaintiffs is that statutes of limitations are procedural and are thus presumptively retroactive. Plaintiffs rely on *Chenault v. United States Postal Serv.,* 37 F.3d 535, 538 (9th Cir.1994), for this proposition. The *Chenault* court read *Landgraf* to imply that if a provision is procedural, there is a presumption of retroactivity. *Id.* Plaintiffs fail to note, though, that *Chenault* expressly qualified this general pronouncement with the following statement: "However, we have recognized that a statute of limitations may not be applied retroactively to revive a claim that would otherwise be stale under the old scheme ...." *Id.* The *Chenault* court subsequently declined to apply retroactively a new statute of limitations to revive the plaintiff's claim:

> [W]e hold that a newly enacted statute that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme because to do so would "alter the substantive rights" of a party and "increase a party's liability." In this case the rights of the defendant would be altered and its liability increased because it would be forced to defend an action that was previously time-barred.

*Id.* at 539 (citing *FDIC v. Belli,* 981 F.2d 838, 842–43 (5th Cir.1993)). More importantly, the United States Supreme Court later rejected the *Chenault* dicta on which Plaintiff relies. *Hughes,* 520 U.S. at 950, 117 S.Ct. 1871 (noting the only presumption in *Landgraf* was the one against retroactivity).

In conclusion, the Court finds that Plaintiffs' claims are barred by the original one-year statute of limitations. As noted by the court in *In re Enron Corp. Sec. Derivative & "Erisa" Litig.,* deciding the appropriate statute of limitations "based on when the suit was filed rather than the underlying misconduct would reward those plaintiffs who delayed filing their suits, clearly not the purpose of a limitations period." 2004 WL 405886, at *14. In accordance with this important policy objective, *Landgraf,* and the majority of courts addressing the issue, the Court declines to adopt Plaintiffs' interpretation of the Sarbanes–Oxley Act. Defendants' motion to dismiss should be granted because Plaintiffs' claims are time-barred.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that Defendants' Motion to Dismiss the Consolidated, Amended Complaint (Doc. No. 50) be **GRANTED**. Plaintiffs' Consolidated, Amended Complaint should be **DISMISSED WITH PREJUDICE**.

Pursuant to D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.