Ballard v. Tyco Int'l                    02-MD-1335-PB 04/22/05

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Ballard et al.**

    v.                                    MDL Docket No. 02-1335-PB
                                           Civil No. 04-CV-1336-PB
                                           Opinion No. 2005 DNH 069

**Tyco International et al.**


### MEMORANDUM AND ORDER


Plaintiffs are former shareholders of AMP, Inc. who acquired shares of stock in Tyco International Ltd ("Tyco") on April 4, 1999, when Tyco and AMP merged ("AMP/Tyco merger"). They allege, *inter alia*, that PricewaterhouseCoopers LLP ("PwC"), as Tyco's auditor during the relevant time, violated Section 11 of the 1933 Securities Act (the "Securities Act") and Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act").

PwC argues in a motion to dismiss that plaintiffs' claims against it are time-barred. For the reasons set forth below, I grant PwC's motion.

## I.   BACKGROUND

Plaintiffs are 33 family trusts and four individuals.  When Tyco and AMP merged on April 4, 1999, plaintiffs received 0.7839 of a share of Tyco stock for each share of AMP stock.  Plaintiffs acquired over 2.9 million Tyco shares as a result of the merger.

On January 20, 2004, plaintiffs filed a complaint in the Southern District of New York against Tyco, several of Tyco's former officers and directors, and PwC.[1]  Plaintiffs allege that Tyco and its former officers and directors misled investors into believing that the company was experiencing continuous, organic growth when, in fact, Tyco's apparent success was instead a result of fraudulent accounting.  Specifically, plaintiffs charge that Tyco's portrayal of itself as a "turn around" specialist, able to identify troubled but promising companies, acquire them, and turn them into profitable enterprises, was materially false and misleading.  Instead, plaintiffs allege, Tyco's improving earnings performance resulted from improperly causing acquisition

---

[1]  Tyco has filed a separate motion to dismiss plaintiffs' claims against it and its former officers (Doc. No. 213).  This Memorandum and Order addresses only plaintiffs' claims against PwC.

targets, including AMP, to report artificially high pre-merger losses in order to create the illusion of post-merger performance improvements.

Plaintiffs also allege that during the relevant time, PwC "(a) audited Tyco's financial statements; (b) issued materially false and misleading opinions on those financial statements; [and] (c) consented to the use of its unqualified opinions in Tyco's publically filed statements." Compl. ¶ 51. Pursuant to these audits, plaintiffs charge that PwC had access to Tyco's internal accounting records, and thus to intimate knowledge of Tyco's financial reporting practices. See Compl. ¶¶ 194-99. According to plaintiffs, PwC either knew of or recklessly disregarded Tyco's improper financial reporting and therefore was complicit in the fraudulent scheme. Compl. ¶ 195.

This is not the first action that has been based in part on Tyco's alleged misconduct in connection with the AMP merger. As the complaint explains, on December 9, 1999, a number of Tyco shareholders filed putative class actions against Tyco in several different federal courts. See In re Tyco International, Ltd. Sec. Litig. ("Tyco I"), 185 F. Supp. 2d 102, 109 (D.N.H. 2002).

The actions were transferred to this court by the Judicial Panel on Multidistrict Litigation and a consolidated complaint was filed by the designated lead plaintiffs on behalf of the class. The proposed class in Tyco I consisted of those individuals and entities that had acquired Tyco stock between October 1, 1998 and December 8, 1999, a period that includes the date on which plaintiffs acquired their Tyco shares. PwC was not named as a defendant. I ultimately dismissed the Tyco I complaint on February 22, 2000, prior to class certification. Tyco I, 185 F. Supp. 2d at 116.

## II.  STANDARD OF REVIEW

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must "accept as true all well-pleaded allegations and give plaintiffs the benefit of all reasonable inferences." Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999)(citing Gross v. Summa Four, Inc., 93 F.3d 987, 991 (1st Cir. 1996)). However, while a court "deciding a motion to dismiss under Rule 12(b)(6) . . . must take all well-pleaded facts as true . . . it need not credit a complaint's 'bald assertions' or legal conclusions." Shaw v. Digital Equip. Corp.,

-4-

82 F.3d 1194, 1216 (1st Cir. 1996)(quoting Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993)). Finally, a complaint should not be dismissed under Rule 12(b)(6) unless it "presents no set of facts justifying recovery." Cooperman, 171 F.3d at 46 (citing Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989)).

## III. ANALYSIS

Prior to July 30, 2002, claims brought under § 11 of the Securities Act had to be commenced "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence" *and* "no later than three years after the security was bona fide offered to the public. . . ." 15 U.S.C. § 77m (emphasis added). Similarly, claims brought under § 10(b) of the Exchange Act had to be commenced "within one year after the discovery of the facts constituting the violation *and* within three years after such violation." Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 360 (1991)(emphasis added); see 15 U.S.C. § 78i(e).

Section 804 of the Sarbanes-Oxley Act of 2002 ("SOX"), extended the statutes of limitations and repose to two years and five years, respectively, for private securities actions that involve "a claim of fraud, deceit, manipulation, or contrivance." Pub. L. No. 107-204 § 804, 116 Stat. 801, codified at 28 U.S.C. § 1658(b). The new limitations and repose periods apply to actions that are commenced after the act's July 30, 2002 effective date. Id.

PwC argues that plaintiffs' Securities Act and Exchange Act claims against it are time barred because plaintiffs waited more than three years after they acquired their Tyco stock to file suit. Plaintiffs respond with two arguments. First, they argue that their claims are timely because they are saved by the class action tolling doctrine. Alternatively, they argue that their claims are saved by the five-year repose period mandated by SOX. I address each argument in turn.

## A. Plaintiffs' claims against PwC are time-barred under the applicable three-year statute of repose

PwC argues that plaintiffs' claims must be dismissed because they are barred by the applicable three-year statute of repose. It is undisputed that the three-year repose period began to run

on plaintiffs' claims on April 4, 1999, the date they acquired their Tyco stock. It is also undisputed that plaintiffs did not file their claim until January 20, 2004, nearly two years after the three-year repose period expired on April 4, 2002. Plaintiffs nevertheless argue that their claims are not time-barred because the running of the repose period tolled between December 9, 1999, when Tyco I was filed, and February 22, 2002, when Tyco I was dismissed. See 185 F. Supp. 2d at 115-16. I disagree.

In support of their argument, plaintiffs attempt to invoke the class-action tolling doctrine articulated by the United States Supreme Court in American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 551 (1974). In American Pipe the Court held that in certain situations, the filing of a class action pursuant to Fed. R. Civ. P. 23 suspends the applicable statute of limitation and repose periods for all putative members of that class while the case is pending. Id. at 551. The Court explained that the class-action tolling rule is necessary to eliminate the incentive for each individual class member to file a separate action, thus defeating the purpose of Fed. R. Civ. P. 23. Id.; see also Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350-51 (1983).

PwC counters that the American Pipe tolling doctrine is inapplicable because it was not named as a defendant in Tyco I, and Tyco I makes no mention of PwC. According to PwC, American Pipe tolling applies only with respect to subsequent actions that are brought against the *same* defendants sued in the original class action. See Arneil v. Ramsey, 550 F.2d 774, 782 n.10 (2d Cir. 1977)(declining to extend the rule and noting that "nothing in American Pipe suggests that the statute be suspended from running in favor of a person not named as a defendant in the class suit . . . . A different conclusion would not comport with reason."); Anderson v. Cornejo, 1999 WL 258501, at *4 (N.D. Ill. Apr. 21, 1999)(concluding that the American Pipe rule does not apply to parties who were not previously named as defendants in a plaintiff class action unless it is a case involving a class of defendants); Mott v. R.G. Dickinson & Co., 1993 WL 63445, at *5 (D. Kan. Feb. 24. 1993)(concluding that the American Pipe rule only tolls the statute of limitations for putative class members who were the same defendants in the prior action); In re Clinton Oil Co. Sec. Litig., 1977 WL 1009, at *16 (D. Kan. Mar. 18, 1977)(noting that the language of American Pipe emphasized that "notice to the defendants of the institution of the action would

-8-

be necessary to the application of this tolling concept"); <u>see also</u> <u>Lindner Dividend Fund v. Ernst & Young</u>, 880 F. Supp. 49, 53-54 (D. Mass. 1995)(holding that the <u>American Pipe</u> tolling doctrine could not be invoked against a defendant whose auditor was originally named in the class action, but was dropped from the amended complaint).[2]

Plaintiffs nonetheless urge that the <u>American Pipe</u> rule should be extended to PwC because the claims set forth in the original action are substantially similar to and involve the same evidence and witnesses as the claims against PwC in the present action. Further, plaintiffs contend that <u>Tyco I</u> put PwC on notice that stockholder claimants were seeking relief under the securities laws based on Tyco's fraudulent conduct.

Unfortunately for plaintiffs, the cases they cite in support of extending the rule are easily distinguished. For example, in

---

[2] I am not persuaded by plaintiffs' assertion that the cases cited by PwC are inapposite because in four of the cases (all except <u>Lindner</u>), the defendant lacked actual notice of the original class action whereas here, PwC did have actual notice of <u>Tyco I</u>. None of these cases even considers whether or not the defendant had actual notice of the original suit to which it was not a party. <u>See</u> <u>Arneil</u>, 550 F.2d at 782-83; <u>Anderson</u>, 1999 WL 258501, at 84; <u>Mott</u>, 1993 WL 63445, at *5; <u>Clinton Oil</u>, 1977 WL 1009, at *16.

<u>Becks v. Emery-Richardson, Inc. et al.</u>, the court applied the <u>American Pipe</u> rule and tolled the statute of limitations against AIG, even though AIG had not been named in the earlier class action, because two of AIG's corporate subsidiaries had themselves been named in that action. 1990 WL 303548, at *12 (S.D. Fla. Dec. 21, 1990). The "parental" relationship between AIG and two of its subsidiaries persuaded the court that AIG was the "control person" as to these subsidiaries and that "constructive if not actual notice was given to AIG of this litigation, so that AIG is not unreasonably included in this action." <u>Id.</u> Those facts differ significantly from the situation here, where PwC is not a member of Tyco's corporate family. The <u>Becks</u> holding thus does not apply. Plaintiffs fail to supply any other argument in favor of extending the <u>American Pipe</u> rule to their case.[3] I therefore decline to do so here.

---

[3] The other cases cited by plaintiffs do not address the question of whether the <u>American Pipe</u> tolling rule should be extended to new defendants not named in the original class action. Rather, these cases address the question of whether <u>American Pipe</u> suspends the statute of limitations on claims that are similar, but not identical, to those in the original action. <u>See</u> <u>Cullen v. Margiotta</u>, 811 F.2d 698, 720-21 (2d Cir. 1987); <u>Tosti v. City of Los Angeles</u>, 754 F.2d 1485, 1489 (9th Cir. 1985); <u>In re Linerboard Antitrust Litig.</u>, 223 F.R.D. 335, 351-52 (E.D. Pa. 2004); <u>Barnebey v. E.F. Hutton & Co.</u>, 715 F. Supp.

**B.   Plaintiffs' claims are not saved by the Sarbanes-Oxley Act**

Plaintiffs next argue that their claims are saved by SOX's five-year statute of repose even if the <u>American Pipe</u> tolling doctrine does not apply.  As an initial matter, because plaintiffs' claim under § 11 of the Securities Act does not sound in fraud and SOX applies only to fraud claims.  The Act's extended limitation and repose periods do not apply to plaintiffs' § 11 claim.[4]  <u>See</u> <u>In re FirstEnergy Corp. Sec. Litig.</u>, 316 F. Supp. 2d 581, 601 (N.D. Ohio 2004); <u>Lawrence E. Jaffe Pension Plan v. Household Int'l</u>, 2004 WL 574665, at *12 (D. Ill. Mar. 22, 2004); <u>In re Enron</u>, 2004 WL 405886, at *11-12; <u>Friedman v. Rayovac Corp.</u>, 295 F. Supp. 2d 957, 974-75 (W.D. Wis. 2003); <u>In re Global Crossing, Ltd. Sec. Litig.</u>, 313 F. Supp. 2d 189, 196-97 (S.D.N.Y. 2003); <u>In re WorldCom, Inc. Sec. Litig.</u>, 294 F. Supp. 2d 431, 443-44 (S.D.N.Y. 2003).

---

1512, 1528 (M.D. Fla. 1989).  As such, these cases do not advance plaintiffs' argument.

[4] Plaintiffs expressly state in their complaint that their § 11 claim against PwC "does not sound in fraud" and that "[a]ll of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count."  Compl. ¶ 237.  Accordingly, they do not strenuously argue that SOX's extended periods should be applied to this claim.

Plaintiffs' stronger argument is that SOX saves their §

10(b) claim.  The difficulty with this argument, however, is that

I agree with the great weight of authority which holds that SOX

does not revive claims that become time-barred before the Act's

effective date.  See Foss v. Bear, Stearns & Co., 394 F.3d 540,

542 (7th Cir. 2005)(holding that SOX does not revive time-barred

claims); In re Enterprise Mortgage Acceptance Co. Sec. Litig.,

391 F.3d 401, 406-10 (2d Cir. 2004)(same); Quaak v. Dexia, 2005

WL 352558, at *5 (D. Mass. Feb. 9, 2005)(same); Milano v. Perot

Systems Corp., 2004 WL 2360031, at *5-8 (N.D. Tex. Oct. 19,

2004)(same); Zouras v. Hallman, 2004 WL 2191034, at *15-16

(D.N.H. Sept. 30, 2004)(same); Zurich Capital Markets Inc. v.

Coglianese, 2004 WL 2191596, at *9 (N.D. Ill. Sept. 23,

2004)(same); L-3 Communications Corp. v. Clevenger, 2004 WL

1941248, at *3-6 (E.D. Pa. Aug. 31, 2004)(same); In re Worldcom,

Inc. Sec. Litig., 2004 WL 1435356, at *6-7 (S.D.N.Y. June 28,

2004)(same); Lieberman v. Cambridge Partners, LLC, 2004 WL

1396750, at *3 (E.D. Pa. June 21, 2004)(same); In re ADC

Telecomm., Inc. Sec. Litig., 331 F. Supp. 2d 799, 801 (D. Minn.

2004)(same); In re Enron Corp. Securities, Derivative & ERISA

Litig., 2004 WL 405886, at *17 (S.D. Tex. Feb. 25, 2004)(same);

-12-

<u>Glaser v. Enzo Biochem, Inc.</u>, 303 F. Supp. 2d 724, 733-34 (E.D. Va. 2003)(same); <u>In re Heritage Bond Litig.</u>, 289 F. Supp. 2d 1132, 1148 (C.D. Cal. 2003)(same); <u>but</u> <u>see</u> <u>Roberts v. Dean Witter Reynolds</u>, 2003 WL 1936116 (M.D. Fla. Mar. 31, 2003). Because plaintiffs' § 10(b) claim had already become time-barred when SOX became effective, SOX does not save the claim from the three-year statute of repose.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, I grant PwC's motion to dismiss. (Doc. No. 308).

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

April 22, 2005

cc: Counsel of Record

-13-