391 F.3d 401
 In re ENTERPRISE MORTGAGE ACCEPTANCE CO., LLC, SECURITIES LITIGATION, Aetna Life Insurance Company and Great Southern Life Insurance Company, Plaintiffs-Appellants,
v.
ENTERPRISE MORTGAGE ACCEPTANCE COMPANY, LLC, Jeffrey J. Knyal, Kenneth A. Saverin, Charlene S. Chai, Sean A. Stalfort, Koch Industries, Inc., Koch Capital Services, Inc. and Jeffrey R. Thompson, Defendants-Appellees.
Jack McBride, on behalf of himself and all others similarly situated, Capital West Asset Management and Employer-Teamsters Local Nos. 175 & 505 Pension, Plaintiffs-Appellants,
v.
Ira H. Zar, Russell M. Artzt, Computer Associates International, Inc., Charles B. Wang and Sanjay Kumar, Defendants,
Ernst & Young LLP, Defendant-Appellee.
 Docket No. 03-9261.
 Docket No. 03-9265.
 Docket No. 04-0392.
 United States Court of Appeals, Second Circuit.
 Argued: October 4, 2004.
 Decided: December 6, 2004.
 
 Lawrence C. Fox, Kornstein Veisz Wexler & Pollard, LLP, (Howard S. Veisz, on the brief), New York, NY, for Plaintiff-Appellant Aetna Life Insurance Company.
 Beth D. Jacob, Schiff Hardin LLP, New York, NY, for Plaintiff-Appellant Great Southern Life Insurance Company.
 Irwin H. Warren, Weil Gotshal & Manges LLP, New York, NY, for Defendant-Appellee Enterprise Mortgage Acceptance Company, LLC.
 Samuel Kadet, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendant-Appellee Koch Industries, Inc., and Koch Capital Services, Inc., LLC.
 Anthony M. Radice, Morrison & Foerster, New York, NY, for Defendant-Appellee Jeffrey J. Knyal.
 Barry Berke, Kramer Levin Naftalis & Frankel LLP, New York, NY, Defendants-Appellees Charlene S. Chai, Kenneth A. Saverin, and Sean A. Stalfort.
 Daniel P. Waxman, Bryan Cave LLP, New York, NY, for Defendant-Appellee Jeffrey R. Thompson.
 Barry A. Weprin, Milberg Weiss Bershad & Schulman LLP, New York, N.Y. (Melvyn I. Weiss and Lawrence McCabe, Milberg Weiss Bershad & Schulman LLP, New York, NY, Richard S. Schiffrin, David Kessler, and Andrew L. Zivitz, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, on the brief) for Plaintiffs-Appellants Jack McBride, Capital West Asset Management and Employer-Teamsters Local Nos. 175 & 505 Pension.
 Bruce M. Cormier, Ernst & Young LLP, Washington, D.C. (Michael L. Rugen, Richard A. Martin, and Robin E. Wechkin, Heller Ehrman White & McAuliffe, New York, NY, Marguerette N. Hosbach, Ernst & Young LLP, Washington, D.C., on the brief) for Defendant-Appellee Ernst & Young LLP.
 Before: MINER, CABRANES, and STRAUB, Circuit Judges.
 JOSÉ A. CABRANES, Circuit Judge.
 
 
 1
 The central issue raised in these appeals is whether Section 804 of the Public Company Accounting Reform and Investor Protection Act of 2002 ("Sarbanes-Oxley"),[1] revives previously expired securities claims. Although these cases involved different parties, were decided by different district courts, and have not been formally consolidated on appeal, we heard them on the same day and now resolve them together because they present substantially identical issues.
 
 
 2
 For the reasons set forth below, we affirm the respective judgments of the district courts, in each case finding that Section 804 of Sarbanes-Oxley — which extended the statute of limitations for private securities fraud cases from the longer of one year from the date of discovery or three years from the date of occurrence to the longer of two years from the date of discovery or five years from the date of occurrence — does not revive plaintiffs' expired securities fraud claims. In the case of McBride v. Ernst & Young LLP, we further affirm Judge Platt's finding that plaintiffs therein did not commence their action against defendant Ernst & Young within the applicable statute of limitations, and therefore hold that Judge Platt properly dismissed the complaint against Ernst & Young.
 
 BACKGROUND
 
 3
 In each of these cases, plaintiffs initiated actions for securities fraud prior to the passage of Sarbanes-Oxley. Then, after Sarbanes-Oxley was enacted on July 30, 2002, plaintiffs in one case appended additional claims and, in the other, joined an additional defendant, to try to take advantage of Sarbanes-Oxley's extended statute of limitations. The full histories of these cases are reported in the orders of the district courts. See In re Enter. Mortgage Acceptance Co., 295 F.Supp.2d 307 (S.D.N.Y.2003); McBride v. Ernst & Young LLP, No. 02-CR-1266, Mem. & Order (E.D.N.Y. Dec. 3, 2003); see also In re Computer Assocs. 2002 Class Action Sec. Litig., 75 F.Supp.2d 68 (E.D.N.Y.1999). Below, we recount only those facts relevant to the disposition of these appeals.
 
 
 4
 I. In re Enterprise Mortgage Acceptance Company
 
 
 5
 In June 2002, plaintiffs Aetna Life Insurance Company ("Aetna") and Great Southern Life Insurance Company ("Great Southern") filed securities fraud complaints against Enterprise Mortgage Acceptance Company ("EMAC"). In re Enter. Mortgage Acceptance Co., 295 F.Supp.2d at 309. In those complaints, Aetna and Great Southern alleged that EMAC violated Section 10(b) of the Securities Act of 1934 and Rule 10b-5, 17 C.F.R. 240.10b-5, promulgated thereunder, when, in private placements between 1998 and 2000, EMAC sold Aetna and Great Southern interests in loans to gasoline stations, car washes, "quick lube" businesses, and convenience stores. Aetna and Great Southern contended that EMAC fraudulently induced them to participate in these offerings with false and materially misleading statements and omissions regarding EMAC's lending practices and that, as a result of their investments in EMAC, Aetna and Great Southern suffered substantial losses.
 
 
 6
 In Aetna's initial complaint, filed on June 12, 2002, Aetna asserted federal claims concerning its 1998, 1999, and 2000 purchases, and Great Southern, in its June 14, 2002 complaint, asserted state claims concerning its 1999 purchases as well as federal claims concerning its 2000 purchases. In re Enter. Mortgage Acceptance Co., 295 F.Supp.2d at 309. Aetna subsequently withdrew the federal claims relating to its 1998 and 1999 purchases, conceding that these claims were barred by the applicable statute of limitations. Id. at 309 n. 4. In May 2003, Aetna and Great Southern filed new complaints, again under Section 10(b) and Rule 10b-5, concerning Aetna's 1998 and 1999 purchases and Great Southern's 1999 purchases. EMAC moved to dismiss these claims as time-barred, but Aetna and Great Southern argued that their claims had been revived by Sarbanes-Oxley. Id. at 309.
 
 
 7
 Judge Kram rejected the argument that Sarbanes-Oxley revived stale securities fraud claims and granted EMAC's motion to dismiss those federal claims that related to Aetna and Great Southern's 1998 and 1999 purchases of EMAC securities. Id. at 312. This appeal followed.
 
 II. McBride v. Ernst & Young, LLP
 
 8
 Plaintiff Jack McBride and co-plaintiffs (collectively "McBride") filed a securities fraud class action against Computer Associates ("CA") on February 25, 2002. On October 22, 2002, nearly three months after the enactment of Sarbanes-Oxley, McBride filed an amended complaint against CA and joined Ernst & Young ("E & Y"), CA's accounting firm, as a defendant. In the amended complaint, McBride alleged that "E & Y falsely certified the propriety of the methodology used to compile, and the accuracy of the results reported in, CA's annual securities filings for 1999 and 2000." McBride, Mem. & Order at 2.
 
 
 9
 E & Y then moved to dismiss the amended complaint as time-barred under the pre-Sarbanes-Oxley statute of limitations. On August 23, 2003, McBride settled with CA, but not with E & Y. Thereafter, Judge Platt found (1) that McBride's claims against E & Y were "not entitled to the more generous statute of limitations provided by Sarbanes-Oxley";[2] and (2) that McBride had not filed the amended complaint within the applicable pre-Sarbanes-Oxley statute of limitations. Judge Platt therefore dismissed McBride's complaint against E & Y. McBride appealed.
 
 DISCUSSION
 I. Standard of Review
 
 10
 We review de novo the determination that Section 804 of Sarbanes-Oxley does not revive already expired securities fraud claims, see, e.g., Perry v. Dowling, 95 F.3d 231, 235 (2d Cir.1996) (de novo review for issues of statutory interpretation), which is a question of first impression for this Court.
 
 II. Analysis
 A. Retroactive Application
 
 11
 The Supreme Court has recognized that though Congress is empowered to enact retroactive legislation, retroactive statutes raise such "special concerns," INS v. St. Cyr, 533 U.S. 289, 315, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), that "congressional enactments ... will not be construed to have retroactive effect unless their language requires this result," Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (internal quotation marks omitted) (emphasis added). Consequently, those "cases where [the] Court has found truly `retroactive' effect adequately authorized by statute have involved statutory language that was so clear it could sustain only one interpretation." Lindh v. Murphy, 521 U.S. 320, 328 n. 4, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).
 
 
 12
 In Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court set forth a two-part test for determining whether a statute applies retroactively. At the first stage, a court must "determine whether Congress has expressly prescribed the statute's proper reach." Id. at 280, 114 S.Ct. 1483. If Congress has done so, the inquiry ends, and the court enforces the statute as it is written. See id. If the statute is ambiguous or contains no such express command, the court proceeds to the second stage of the Landgraf test and "determine [s] whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. If the statute, as applied, would have such an effect, it will not be applied retroactively "absent clear congressional intent" to the contrary. Id.
 
 
 13
 In accordance with Landgraf, we begin by looking to the plain language of Section 804 of Sarbanes-Oxley. Because the language of Section 804 does not unambiguously revive previously stale securities fraud claims, and because Section 804's legislative history does not suggest that Congress intended to provide for retroactive application of the revised statute of limitations, we next inquire whether extending the statute of limitations to revive expired claims would have a "retroactive effect." Upon review of the relevant factors, we conclude that extending the statute of limitations to revive stale claims would have such an effect. Accordingly, because neither the language nor the legislative history of Section 804 requires that we do so, we decline to apply Section 804 retroactively to revive plaintiffs' previously expired securities fraud claims and instead defer to the longstanding presumption against retroactive application.
 
 1. Congressional Intent
 
 14
 Section 804(1) amends 28 U.S.C. § 1658(b) to provide:
 
 
 15
 (a) ... [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of —
 
 
 16
 (1) 2 years after the discovery of the facts constituting the violation; or
 
 
 17
 (2) 5 years after such violation.
 
 
 18
 (b) EFFECTIVE DATE. — The limitations period provided by section 1658(b) of title 28, United States Code, as added by this section, shall apply to all proceedings addressed by this section that are commenced on or after the [July 30, 2002,] date of enactment of this Act.
 
 
 19
 (c) NO CREATION OF ACTIONS. — Nothing in this section shall create a new, private right of action.
 
 
 20
 Public Company Accounting Reform and Investor Protection Act of 2002, Pub.L. No. 107-204 § 804, 116 Stat. 745, 801 codified in part at 28 U.S.C. § 1658(b).
 
 
 21
 On the basis of the foregoing, plaintiffs urge that because Section 804(b) states that the revised statute of limitations "shall apply to all proceedings ... that are commenced on or after the date of enactment of this Act," and because plaintiffs' proceedings were commenced subsequent to the July 30, 2002, date of enactment,[3] their claims are timely. Id. § 804(b), 116 Stat. at 801 (at 28 U.S.C. § 1658 note). Although Section 804(b) is perhaps most naturally read as applying to any proceeding that is commenced after Sarbanes-Oxley's July 30, 2002, enactment, the statute contains none of the unambiguous language that the Supreme Court has asserted would amount to an express retroactivity command, see Landgraf, 511 U.S. at 255-56 & n. 8, 114 S.Ct. 1483 (stating that the language "all proceedings pending on or commenced after the date of enactment" amounted to "an explicit retroactivity command") (emphasis added); Martin v. Hadix, 527 U.S. 343, 354, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (describing the sentence, "`[t]he new provisions shall apply to all proceedings pending on or commenced after the date of enactment'" as "unambiguously address[ing] the temporal reach of the statute") (quoting Landgraf, 511 U.S. at 260, 114 S.Ct. 1483); nor that which Congress has used in previous statutes to indicate its intent to revive time-barred claims, see, e.g., Riegle-Neal Interstate Banking and Branching Efficiency Act of 1994, Pub.L. No. 103-328, § 201(a), 108 Stat. 2338, 2368 (codified at 12 U.S.C. § 1821(d)(14)(C)(i)) (amending the Act to provide that "the Corporation may bring an action ... on such claim without regard to the expiration of the statute of limitation applicable under State law"); Higher Education Technical Amendments of 1991, Pub.L. No. 102-026, § 3, 105 Stat. 123, 124 (codified at 20 U.S.C. § 1091a(a)(2)) (eliminating statute of limitations with regard to recovering on defaulted student loans by stating "no limitation shall terminate the period within which suit may be filed").
 
 
 22
 Plaintiff's argument that Sarbanes-Oxley unambiguously revived previously expired securities fraud claims is also not assisted by Section 804(c), which states: "Nothing in this section shall create a new, private right of action." Plaintiffs contend that, with this language, Congress was merely confirming that Section 804 was "only lengthening the statute of limitations" and not expanding upon existing types of securities claims. Although plaintiffs' reading of Section 804(c) is a plausible one, the issue is not free of doubt. Assuming plaintiffs' claims had already expired, plaintiffs were barred from bringing their claims prior to the enactment of Sarbanes-Oxley on July 30, 2002. According to their construction, however, they were able to bring these claims on July 31, 2002. Where a plaintiff is empowered by a new statute to bring a cause of action that previously had no basis in law, a new cause of action has, in some sense of the word, been created. See Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 950, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) ("In permitting actions by an expanded universe of plaintiffs with different incentives, the 1986 amendment essentially creates a new cause of action, not just an increased likelihood that an existing cause of action will be pursued."); see also Chenault v. United States Postal Serv., 37 F.3d 535, 538 (9th Cir.1994) (recognizing "that a statute of limitations may not be applied retroactively to revive a claim that would otherwise be stale under the old scheme").
 
 
 23
 The lack of clarity that results from the tension that may be implied between 804(b) and 804(c) undermines plaintiffs' contention that, in enacting Section 804, Congress made its intentions for retroactivity unmistakably clear. The requirement of congressional clarity, moreover, must be met both in order to overcome the presumption against retroactive application and to obviate the need for proceeding to the second stage of the Landgraf test. See Landgraf, 511 U.S. at 268, 114 S.Ct. 1483. As the Landgraf Court recognized, "[r]equiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." Id. at 272-73, 114 S.Ct. 1483.
 
 
 24
 It also bears noting that the legislative history of Section 804 does not clearly indicate that Congress intended that Section 804 apply retroactively to revive expired securities fraud claims. See Rabin v. Wilson-Coker, 362 F.3d 190, 199 (2d Cir.2004) ("[W]e ... look to legislative history to determine the intent of an ambiguous statute."); see also Landgraf, 511 U.S. at 262-63, 114 S.Ct. 1483 (examining legislative history to determine congressional intent at first stage of the Landgraf test). Section 804's precurser, Section 4 of the proposed Corporate and Criminal Fraud Accountability Act of 2002, S. No.2010, was introduced by Senator Patrick Leahy in March 2002. Nothing in the Senate Committee Report for the proposed Act indicates that the extension of the statute of limitations was intended to revive expired claims or that Congress was even considering such a thing. See S.Rep. No. 107-146 (2002).[4] Nor do the statements Senator Keahy made during the Conference Committee meeting on Sarbanes-Oxley reflect any intention to revive expired claims.[5] And where Congress does not clearly indicate its intention for retroactive application — or as here, does not seem even to contemplate it — we must move to the second stage of the Landgraf inquiry.
 
 2. Retroactive Effects
 
 25
 Because there is no clear evidence that Congress intended for Section 804 to apply retroactively, we next ask whether retroactive application of Section 804 would have "retroactive effects," i.e., whether it would produce the kind of result that motivated the presumption against retroactive application in the first place. See Landgraf, 511 U.S. at 265, 114 S.Ct. 1483 (describing the presumption against retroactivity as rooted in "[e]lementary considerations of fairness[, which] dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly").
 
 
 26
 This second step of the Landgraf test has sometimes been described as an inquiry into whether the statutory change affects substantive or procedural rights. See, e.g., Vernon v. Cassadaga Valley Cent. Sch. Dist., 49 F.3d 886, 890 (2d Cir.1995) ("[A]pplying Landgraf requires courts to determine whether a portion of a statute operates retroactively or prospectively, and, in connection with that determination, to resolve whether the statutory provision at issue is substantive or procedural."); see also Landgraf, 511 U.S. at 275, 114 S.Ct. 1483 ("Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive."). To this end, plaintiffs seize upon the "procedural" label and argue that "[c]ontrolling precedent in this Court unequivocally holds that new statutes of limitations are procedural and do not have any disfavored retroactive effect."
 
 
 27
 But while we noted in Vernon that retroactive application of a revised statute of limitations "generally" does not have an impermissible retroactive effect, 49 F.3d at 889, we did not create a categorical exception from Landgraf' s presumption against retroactive application of legislation. See Martin, 527 U.S. at 359, 119 S.Ct. 1998 ("When determining whether a new statute operates retroactively, it is not enough to attach a label (e.g., `procedural,' `collateral') to the statute; we must ask whether the statute operates retroactively."). Statutes of limitations "protect interests in reliance and repose," Am. Trucking Assoc., Inc. v. Smith, 496 U.S. 167, 214, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990), guard "against stale demands," Bell v. Morrison, 26 U.S. (1 Pet.) 351, 360, 7 L.Ed. 174 (1828) (Story, J.), and limit the circumstances in which a reviewing court can grant relief, see, e.g., Klein v. Shields & Co., 470 F.2d 1344, 1347 (2d Cir.1972). Because, in different contexts, a statute of limitations may fairly be described as either procedural or substantive,[6] we decline plaintiffs' invitation to designate all statutes of limitations as "procedural" and thereby hold that any revised statute of limitations shall have retroactive effect unless Congree has clearly indicated otherwise.
 
 
 28
 Nor can we accept plaintiffs' assertion that no reliance interest can attach in the instant cases because the conduct plaintiffs allege, if proven, would have been unlawful at the time it occurred. The imposition of legal liability for actions that were lawful when they were undertaken is one example of an "impermissible retroactive effect," St. Cyr, 533 U.S. at 320, but it is by no means the only instance where retroactive application of legislation would be undesirable. See Soc'y for the Propagation of the Gospel v. Wheeler, 22 F. Cas. 756, 767 (C.C.D.N.H.1814) (No. 13,156) (Story, J.) ("[E]very statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed [to have an impermissible retroactive effect]."); see also Hughes Aircraft, 520 U.S. at 947, 117 S.Ct. 1871 (recognizing that each of Justice Story's examples of an impermissible retroactive effect "constituted a sufficient, rather than a necessary, condition for invoking the presumption against retroactivity").
 
 
 29
 In our view, the resurrection of previously time-barred claims has an impermissible retroactive effect. Extending the statute of limitations retroactively "increase[s] [a defendant's] liability for past conduct," Landgraf, 511 U.S. at 280, 114 S.Ct. 1483, by increasing the period of time during which a defendant can be sued. This effect is particularly prevalent in the context of claims that have already expired. Resurrection of such claims puts defendants back at risk at a point when defendants reasonably believe they are immune from litigation,[7] stripping them of a complete affirmative defense they previously possessed and may have reasonably relied upon. See Winfree v. N. Pac. Ry. Co., 227 U.S. 296, 302, 33 S.Ct. 273, 57 L.Ed. 518 (1913) ("[A] statute which permits recovery, in cases where recovery could not be had before, and takes from the defendant defenses which formerly were available .... should not be construed as retrospective." (internal quotation marks omitted)); cf. Stogner v. California, 539 U.S. 607, 631, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003) (recognizing that California's extension of the statute of limitations for sex-related child abuse, where the prior limitations period had already expired, "retroactively [withdrew] a complete defense to prosecution after it ha[d] already attached" and thereby violated the Ex Post Facto Clause).
 
 
 30
 Such characteristics fall within the class of "retroactive effects" against which the Landgraf Court cautioned, 511 U.S. at 280, 114 S.Ct. 1483, and dictate that retroactive application be avoided "absent clear congressional intent favoring such a result," id. And because neither the statutory language nor the legislative history of Section 804 indicate that Congress clearly favored retroactive application, plaintiffs' argument must fail.[8]
 
 B. Inquiry Notice
 
 31
 McBride argues in the alternative that plaintiffs' claim against E & Y is not time-barred under the pre-Sarbanes-Oxley statute of limitations, because, McBride contends, the question of whether a reasonable investor was put on inquiry notice of E & Y's potential liability by a series of articles published in The New York Times and Newsday prior to October 2001 — which suggested that CA had been engaging in "accounting gimmicks" and other "creative accounting" practices — was an issue of fact that should have been decided by a jury. We concur in the judgment of Judge Platt that this argument is without merit. See McBride, Mem. & Order at 8-9; see also LC Capital Partners, LP v. Frontier Ins. Group, Inc., 318 F.3d 148, 156 (2d Cir.2003) ("Where the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers integral tot he complaint, resolution of the issue on a motion to dismiss is appropriate." (internal quotation marks and omissions omitted)). We therefore affirm Judge Platt's dismissal of McBride's complaint against E & Y as time-barred.
 
 CONCLUSION
 
 32
 For the foregoing reasons, we conclude that
 
 
 33
 (1) Congress did not clearly provide for retroactive application of Section 804 of Sarbanes-Oxley;
 
 
 34
 (2) revival of previously stale securities fraud claims has an impermissible retroactive effect; and
 
 
 35
 (3) in the absence of clear congressional intent favoring such a result, we decline to apply Section 804 of Sarbanes-Oxley retroactively to revive plaintiffs' stale securities fraud claims.
 
 
 36
 Accordingly, the District Courts' respective dismissals of plaintiffs' claims as time-barred are hereby AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Pub.L. No. 107-204, § 804, 116 Stat. 745, 801 (2002) codified in part at 28 U.S.C. § 1658(b)
 
 
 [2]
 InMcBride, Judge Platt properly found "that the new statute of limitations provision of Section 804 of Sarbanes-Oxley, as found in 28 U.S.C. § 1658, is not to be applied retroactively to otherwise time-barred claims." McBride, Mem. & Order at 9. In reaching this conclusion, however, Judge Platt erroneously relied on Federal Rule of Civil Procedure 15(c) to find that McBride's October 2002 amended complaint against E & Y "related back" to McBride's prior complaint against CA. Judge Platt therefore held that McBride's amended complaint was not a new "proceeding" within the meaning of Section 804. Id. at 7. By its terms, Rule 15(c) applies in the context of a mistake. It is undisputed that McBride's failure to name E & Y in McBride's original complaint against CA was neither a mistake of law nor a mistake of fact. See id. (finding that plaintiffs "knew at the time that they sued CA that E & Y was CA's accountant" and not finding, or otherwise suggesting, that McBride and his co-plaintiffs made a mistake of law when they failed to name E & Y in their complaint against CA). Because McBride did not sue another accountant by mistake, but rather chose not to name E & Y in their original complaint, Rule 15(c)'s relation back doctrine was inapplicable. See Cornwell v. Robinson, 23 F.3d 694, 705 (2d Cir.1994) (recognizing that a mistake of fact occurs under Rule 15(c) when a plaintiff makes a "mistake concerning [the] identity" of the persons or entities she wishes to sue). "[Plaintiffs'] failure to [name the defendants] in the original complaint... must be considered a matter of choice, not mistake." Id.
 
 
 [3]
 Defendants assert that Section 804 would not apply to plaintiffs' claims even if we concluded that Section 804 revived stale securities fraud claims since plaintiffs did not "commence" their proceedings after July 30, 2002. Because we hold that Sarbanes-Oxley doesnot revive stale claims, we do not address this argument.
 
 
 [4]
 See generally Thornburg v. Gingles, 478 U.S. 30, 44 n. 7, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986) ("We have repeatedly recognized that the authoritative source for legislative intent lies in the Committee Reports on the bill."); United States v. Awadallah, 349 F.3d 42, 54 (2d Cir.2003) ("[T]he authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which represent the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." (internal quotation marks omitted)).
 
 
 [5]
 As Judge Kram noted, Senator Leahy made many statements in regard to Section 804, none of which explicitly reflected an intent to revive expired claimsSee In re Enter., Mortgage Acceptance Co., 295 F.Supp.2d at 316. One of Senator Leahy's statements, based on verb tense, could fairly be interpreted as indicating that the Senator intended for Section 804 to revive expired claims in order to provide relief for individuals who had lost their life-savings to Enron, but another of the Senator's statement, based on verb tense, suggests precisely the opposite. See id. In any case, Senator Leahy's stand-alone remarks would not be dispositive of the issue given the strong presumption against construing statutory language to have retroactive effect. Cf. Branch v. Smith, 538 U.S. 254, 297, 123 S.Ct. 1429, 155 L.Ed.2d 407 (2003) (recognizing that senators'"floor statements [could not] overcome the strong presumption against implied repeals" of statutes); Murphy v. Empire of Am., FSA, 746 F.2d 931, 935 (2d Cir.1984) ("[I]isolated [floor] remarks are entitled to little or no weight, particularly when they are unclear or conflict with one another, as distinguished from a legislative committee's formal report on [a statute's] enactment.").
 
 
 [6]
 See Fleming James, Jr., Geoffrey C. Hazard, Jr. & John Leubsdorf, Civil Procedure § 2.37, at 130-31 (4th ed. 1992) ("[S]tatutes of limitations ... are rationally capable of classification as either procedural or substantive.") (internal quotation marks omitted); see also Sun Oil Co. v. Wortman, 486 U.S. 717, 722-29, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988) (holding that statutes of limitations were properly treated as "procedural" for choice-of-law purposes in context of Full Faith and Credit Clause while noting that Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), treated statutes of limitations as "substantive" for Erie doctrine purposes); Wortman, 486 U.S. at 727, 108 S.Ct. 2117 ("[T]he words `substantive' and `procedural' themselves ... do not have a precise content, even (indeed especially) as their usage has evolved.").
 
 
 [7]
 See St. Cyr v. INS, 229 F.3d 406, 418 (2d Cir.2000) (finding "an impermissible retroactive effect [where retroactive application] would upset settled expectations and change the legal effect of prior conduct"), aff'd, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); Chenault, 37 F.3d at 539 (relying on Landgraf in concluding that "a newly enacted statute that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme because to do so would alter the substantive rights of a party and increase a party's liability" (internal quotation marks omitted)); see also Hughes Aircraft, 520 U.S. at 950, 117 S.Ct. 1871 (citing Chenault for this point with approval).
 
 
 [8]
 We take judicial notice of theamicus brief filed by the Securities and Exchange Commission ("SEC") in a pending appeal, AIG Asian Infrastructure Fund, L.P. v. Chase Manhattan Asia Ltd., Docket No. 04-2403, 2004 WL 2296113 (2d Cir.2004) which likewise involves the issue of whether Section 804 of Sarbanes-Oxley revives previously expired securities fraud claims. In its amicus brief, the SEC urges us to hold that Section 804 revives previously expired securities fraud claims. See SEC Br. at 2. We take the SEC's view under advisement, but we do not defer to it. As the SEC notes in its brief, "Section 804 is applicable to private actions only, and not to Commission enforcement actions." Id. Section 804 consequently is not a statute that the SEC has been entrusted to administer and therefore its viewpoint is not entitled to deference. See Citicorp v. Bd. of Governors of Fed. Reserve Sys., 936 F.2d 66, 75 (2d Cir.1991) ("We recognize that courts are not obliged to defer to interpretations of a statute made by agencies not responsible for its administration."). Moreover, because the SEC's position is put forth only in an amicus brief, it "lacks the force of law and thus does not warrant Chevron deference." See In re New Times Sec. Serv., Inc. 371 F.3d 68, 82 (2d Cir.2004) (internal quotation marks omitted). Chevron deference in this case would also be inappropriate because the SEC's area of expertise does not afford it particular insight into whether Congress intended for Sarbanes-Oxley to revive private actors' expired securities claims. See id. (recognizing that Chevron deference may not be appropriate where the "SEC's `expertise'... is arguably less compelling than it would be with respect to those portions of the Securities Exchange Act as to which [the SEC] takes a more proactive day-to-day role").