**15-2150-cv**
*McCulloch Orthopaedic Surgical Services, PLLC v. Aetna Inc., et al.*

In the

United States Court of Appeals

For the Second Circuit

————

AUGUST TERM, 2015

ARGUED: APRIL 26, 2016
DECIDED: MAY 18, 2017

No. 15-2150-cv

MCCULLOCH ORTHOPAEDIC SURGICAL SERVICES, PLLC, A/K/A DR.
KENNETH E. MCCULLOCH,
*Plaintiff-Appellant,*

*v.*

AETNA INC., DBA AETNA HEALTH AND LIFE INSURANCE CO., *et al.,*
*Defendants-Appellees.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 15 Civ. 2007 – Katherine B. Forrest, *Judge.*

————

Before: WALKER, CALABRESI, and HALL, *Circuit Judges.*

————

We consider in this case whether the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.,*

completely preempts an "out-of-network" health care provider's promissory-estoppel claim against a health insurer where the provider (1) did not receive a valid assignment for payment under a health insurance plan and (2) received an independent promise from the insurer that he would be paid for certain medical services provided to the insured.  We hold that ERISA does not completely preempt such a claim.

————

KENNETH J. MCCULLOCH, Law Office of Kenneth J. McCulloch, New York, NY, *for Plaintiff-Appellant*.

EDWARD WARDELL (Patricia A. Lee, on the brief), Connell Foley LLP, New York, NY, *for Defendants-Appellees.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

We consider in this case whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, completely preempts an "out-of-network" health care provider's promissory-estoppel claim against a health insurer where the provider (1) did not receive a valid assignment for payment under

the health care plan and (2) received an independent promise from the insurer that he would be paid for certain medical services provided to the insured. We hold that ERISA does not completely preempt such a claim.

**BACKGROUND**

Plaintiff-appellant McCulloch Orthopaedic Surgical Services, PLLC, a/k/a Dr. Kenneth E. McCulloch ("McCulloch") filed this action against defendant-appellee Aetna Inc. and several of its wholly-owned subsidiaries[1] in New York State Supreme Court. McCulloch, an orthopedic surgeon, seeks reimbursement from Aetna for performing two knee surgeries on a patient who is a member of an Aetna-administered health care plan that is governed by ERISA. McCulloch is an "out-of-network" provider under this plan—he does not have a contract with Aetna and is not identified

---

[1] In addition to Aetna Inc., the following subsidiaries were named as defendants in this action: Aetna Health Inc., Aetna Health and Life Insurance Company, Aetna Life Insurance Company, and Aetna Health Insurance Company of New York. We refer to all of the defendants collectively as "Aetna."

by Aetna as a participating physician who has agreed to abide by a set fee schedule.

Before performing the patient's surgeries, McCulloch's office staff called a number listed on the patient's Aetna insurance card to obtain information about the patient's coverage. An Aetna representative informed McCulloch's staff that the patient was covered by a health care plan administered by Aetna, that the plan provided for payment to out-of-network physicians, and that the plan covered the surgical procedures that McCulloch would be providing for the patient. The Aetna representative stated that McCulloch would be reimbursed at seventy percent of the usual, customary, and reasonable ("UCR") rate for the knee surgeries and that this rate would be based on an industry-standard schedule.[2]

Relying on Aetna's promise of reimbursement, McCulloch performed the two surgeries and billed Aetna at the UCR rate for a total of $66,048. McCulloch then submitted a health insurance claim

---

[2] McCulloch alleges that he charges UCR rates in accordance with those established by Ingenix, now known as the OptumInsight/FAIRPLAN program. Aetna does not dispute that this is an industry-standard schedule.

form to Aetna for each surgery (Centers for Medicare and Medicaid Services Form 1500). The claim form has two sections that concern the assignment of payment for medical benefits. First, in Box 13, the insured must authorize the "payment of medical benefits to the undersigned physician . . . for services described below." The parties do not dispute that the patient signed both of the completed forms submitted by McCulloch. Second, in Box 27, the form asks if the provider will "Accept Assignment?". The parties also do not dispute that McCulloch checked "yes" in response to this question on the forms.

The patient's health care plan, however, has an anti-assignment provision, which states that:

> Coverage may be assigned only with the written consent of Aetna. To the extent allowed by law, Aetna will not accept an assignment to an out-of-network provider, including but not limited to, an assignment of:
> - The benefits due under this contract;
> - The right to receive payments due under this contract; or
> - Any claim you make for damages resulting from a breach or alleged breach, of the terms of this contract.

Despite this provision, Aetna reimbursed McCulloch $842.51 for the first surgery and $14,425 for the second surgery, for a total of $15,267.51.

On February 17, 2015, McCulloch sued Aetna in New York State court on a single cause of action: promissory estoppel. McCulloch alleged that Aetna had made a clear and unambiguous promise to reimburse him for seventy percent of the UCR rate for both knee surgeries ($46,233.60), that he had reasonably and foreseeably relied on that promise, and that he had been injured as a result. McCulloch sought $30,966.09—the difference between seventy percent of the UCR rate ($46,233.60) and what Aetna had paid him ($15,267.51)—plus interest from August 4, 2011, costs, and other appropriate relief.

On March 17, 2015, Aetna timely removed this action to the United States District Court for the Southern District of New York. Aetna invoked federal-question jurisdiction, asserting that McCulloch's complaint raised a claim for benefits under an employee welfare-benefit plan governed by ERISA. McCulloch then

filed a motion to remand the action to state court. On May 11, 2015, the district court (Katherine B. Forrest, *J.*) issued an opinion and order denying McCulloch's motion to remand and directing McCulloch to amend his complaint "to assert ERISA cause[s] of action not later than . . . May 25, 2015." App'x at 233.

On May 21, 2015, McCulloch moved for reconsideration of the district court's order. He requested that the district court either remand this case to state court or enter a final judgment dismissing the action for failure to state a claim under ERISA. McCulloch did not file an amended complaint. On June 8, 2015, the district court denied McCulloch's motion for reconsideration and, "[i]n light of plaintiff's refusal to amend," dismissed this action. McCulloch timely appealed.

## LEGAL STANDARD

We review *de novo* whether a district court has subject matter jurisdiction. *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011). An action filed in state court may be properly removed by a defendant to federal court in "any civil action . . . of

which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

The defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction. *See Montefiore*, 642 F.3d at 327. Under the "well-pleaded complaint rule," a defendant generally may not "remove a case to federal court unless the *plaintiff's* complaint establishes that the case arises under federal law." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (citation and internal quotation marks omitted). There is, however, an exception to this rule. *Id.* A defendant may properly remove a state-law claim when a federal statute "wholly displaces the state-law cause of action," such that the claim, "even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 207-08 (citation omitted).

ERISA provides for the wholesale displacement of certain state-law claims. Pursuant to ERISA § 502(a)(1)(B), a participant or beneficiary may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), *codified at* 29 U.S.C. § 1132(a)(1)(B). This civil enforcement scheme "completely preempts any state-law cause of action that 'duplicates, supplements, or supplants' an ERISA remedy." *Montefiore*, 642 F.3d at 327 (citation omitted).

In *Aetna Health Inc. v. Davila*, the Supreme Court established a two-pronged test to determine whether a state-law claim is completely preempted by ERISA § 502(a)(1)(B) (the "*Davila*" test). 542 U.S. at 209-10; *see Wurtz v. Rawlings Co.*, 761 F.3d 232, 242 (2d Cir. 2014). The *Davila* test is conjunctive—a state-law claim is completely preempted by ERISA only if both prongs of the test are satisfied. *Montefiore*, 642 F.3d at 328. Under the first prong, the claim must be brought by "an individual [who], at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)."

*Davila*, 542 at 210. In making this determination, we consider: (1) whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B) and also (2) whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B). *Montefiore,* 642 F. 3d at 328. Under the second prong of the *Davila* test, the claim must involve "no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210.

## **DISCUSSION**

The district court held that McCulloch's promissory-estoppel claim was completely preempted by ERISA under the *Davila* test. The district court found that the first prong of this test was satisfied because McCulloch was assigned the right to receive payment under the plan and because McCulloch's promissory-estoppel claim could be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B). The district court further found that the second prong of the *Davila* test was satisfied because the Aetna representative's oral statements did not give rise to an "independent legal duty" and,

instead, that any duty to reimburse McCulloch "ar[ose] out of the terms and conditions of [the patient's] plan." App'x at 243-44.

On appeal, McCulloch argues *inter alia* that his state-law claim is not preempted by ERISA because: (1) he did not receive a valid assignment and thus is not the "type of party" that can bring a claim pursuant to § 502(a)(1)(B) and (2) Aetna's oral statements gave rise to a duty that was distinct and independent from its obligations under the patient's health care plan. We agree.

## I.      *Davila*, Prong 1, Step 1

We first must determine whether McCulloch is "the type of party that can bring a claim pursuant to § 502(a)(1)(B)." *See Montefiore*, 642 F.3d at 328. Aetna argues that, despite the health care plan's anti-assignment provision, it has established a "colorable claim" that McCulloch was assigned the patient's right to payment for medical benefits and that, thus, McCulloch is the type of party that can bring a claim under ERISA. We find this argument unpersuasive. McCulloch—an "out-of-network" health care provider who plainly did not have a valid assignment for

payment—is not the type of party who can bring a claim pursuant to § 502(a)(1)(B).

Under § 502(a), a civil action may be brought "by a participant or beneficiary" of an ERISA plan to recover benefits due to him under the terms of that plan. *See* 29 U.S.C. § 1132(a)(1)(B). ERISA defines a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(2)(B)(8). Although § 502(a) is narrowly construed to permit only the enumerated parties to sue directly for relief, we have "'carv[ed] out a narrow exception to the ERISA standing requirements' to grant standing 'to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care.'" *Montefiore*, 642 F.3d at 329 (quoting *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001)).

In *Montefiore Medical Center v. Teamsters Local 272*, an "in-network" hospital brought state-law claims against a union's employee benefit plan that was governed by ERISA. 642 F.3d at 324-25. The hospital sought reimbursement for medical services that it

had provided to beneficiaries of the plan. *Id.* at 325-26. We found that the hospital's state-law claims were completely preempted by ERISA because, among other things, the hospital had received a valid assignment of the beneficiaries' right to payment and it was, therefore, the type of party that could bring its claim regarding benefits pursuant to § 502(a)(1)(B). *Id.* at 328, 333. In making this determination, we noted that the hospital's reimbursement forms contained a "Y" for "yes" in the space certifying that the beneficiary patients had assigned their claims to the hospital. *Id.* at 329.

Here, McCulloch submitted claim forms to Aetna indicating that the patient had authorized payment of medical benefits to McCulloch and that McCulloch had accepted this assignment from the patient. As we held in *Montefiore*, this normally would constitute an assignment to the provider of the patient's right to payment. *See Montefiore*, 642 F.3d at 329. Unlike in *Montefiore*, however, the health care plan in this case has an anti-assignment provision. This provision states that although "[c]overage may be assigned . . . with

the written consent of Aetna[,] . . . Aetna will not accept an assignment to an out-of-network provider."  App'x at 280.

Based on the plain language of this provision, McCulloch's acceptance of an assignment was ineffective—a legal nullity.  *See Allhusen v. Caristo Constr. Corp.*, 303 N.Y. 446, 452, 103 N.E.2d 891 (1952) (holding that a "clear" and "definite" no-assignment provision "may be construed in no other way but that any attempted assignment of either the contract or any rights created thereunder shall be 'void' as against the obligor"); *see also Physicians Multispeciality Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004) ("[W]e are persuaded by the reasoning of the majority of federal courts that have concluded that an assignment is ineffectual if the [ERISA benefit] plan contains an unambiguous anti-assignment provision.") (collecting cases).

Aetna does not dispute that this provision renders invalid McCulloch's attempt to enforce the purported assignment.  Instead, Aetna argues—and the district court found—that in determining whether preemption applies, we should ignore that the health care

plan prohibits any assignment to McCulloch. The district court noted that "[w]hether the assignment is valid *under the terms of the ERISA plan at issue* is a question to be decided once an ERISA claim is before the Court" and that the attempted assignment between the patient and McCulloch was "all that [was] required to render [McCulloch] 'the type of party that can bring a claim pursuant to § 502(a)(1)(B)' for purposes of complete preemption."[3] App'x at 241.

The first prong of the *Davila* test, however, requires that we must assess whether a party has standing to pursue an ERISA claim. *See Montefiore*, 642 F.3d at 328 n. 7. We have noted that, "[a]bsent a *valid* assignment of a claim, . . . non-enumerated parties lack

---

[3] The district court also stated that, "Aetna in fact sent two payments . . . for [the] surgery directly to [McCulloch] despite the anti-assignment provision" which "is sufficient for purposes of the complete preemption analysis." App'x at 241. There are several district court cases in this circuit that have held that where an ERISA plan either permits assignment with the consent of an insurer or the plan is ambiguous as to whether assignment is permitted, direct payment is sufficient to demonstrate a patient's assignment for preemption purposes. *See, e.g.*, *Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11 CIV. 8517 (BSJ) (AJP), 2012 WL 4840807, at *3 (S.D.N.Y. Oct. 4, 2012). Even assuming *arguendo* that these cases reach the correct holding, we find that they are not analogous to the instant case, which involves a benefit plan that clearly prohibits assignments to out-of-network providers.

statutory standing to bring suit under [ERISA] even if they have a direct stake in the outcome of the litigation." *Conn. v. Physicians Health Srvs. of Conn., Inc.*, 287 F.3d 110, 121 (2d Cir. 2002) (emphasis added); *see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 361 (2d Cir. 2016) ("[W]e have allowed physicians to bring claims under § 502(a) based on a *valid* assignment from a patient." (emphasis added)).

If we were to ignore that the health care plan prohibits an assignment to McCulloch in determining whether his claim is preempted, this would lead to a result that is both unjust and anomalous:  McCulloch would be barred from pursuing state-law claims in state court on preemption grounds and from pursuing an ERISA claim in federal court for lack of standing.  McCulloch—and other third-party providers in similar situations—would be left without a remedy to enforce promises of payment made by an insurer.

Such a rule would not further the principal purpose of ERISA to protect plan beneficiaries and participants.  As the United States

Department of Labor noted in its *amicus* brief,[4] this risk of non-payment might lead medical providers to decide not to treat, or to otherwise screen, patients who are participants in certain plans. *See Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir. 1994) ("[H]ealth care providers [must] be able to rely on insurers' representations as to coverage. If ERISA preempts their potential causes of action for misrepresentation, health care providers . . . must either deny care or raise fees to protect themselves against the risk of noncoverage."); *Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Okla., Inc.*, 944 F.2d 752, 756 (10th Cir. 1991) ("Denying a third-party provider a state law action based upon misrepresentation by the plan's insurer in no way furthers the purposes of ERISA."); *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 247-48 (5th Cir. 1990) ("[D]iscouraging health care providers from becoming

---

[4]   This *amicus* brief was filed in support of McCulloch in a companion case with identical issues—*McCulloch Orthopedic Surgical Services, PLLC v. United Healthcare Insurance Co. of New York*, No. 15-2144-cv.   Although the parties ultimately withdrew this case, we may take judicial notice of the brief.   *See In re Enter. Mortg. Acceptance Co., LLC, Securities Litig.*, 391 F.3d 401, 410 n.8 (2d Cir. 2004) (taking judicial notice of Securities and Exchange Commission *amicus* brief in another appeal addressing similar issues).

assignees would undermine Congress' goal of enhancing employees' health and welfare benefit coverage. . . . This does not serve, but rather directly defeats, the purpose of Congress in enacting ERISA." (citation and internal quotation marks omitted)). Indeed, as the Fifth Circuit has concluded, "[i]f providers have no recourse under either ERISA or state law[,] . . . providers will be understandably reluctant to accept the risk of non-payment, and may require up-front payment by beneficiaries—or impose other inconveniences—before treatment will be offered." *Mem'l Hosp. Sys.*, 904 F.2d at 247.

In sum, while the patient attempted to assign McCulloch the right to payment for the surgeries that McCulloch performed, this assignment was prohibited under the terms of the patient's health care plan. Aetna—which has not argued on appeal that the anti-assignment provision does not apply—has failed to establish that McCulloch is the "type of party" who may bring claims pursuant to § 502(a)(1)(B).

## II.    *Davila*, Prong 1, Step 2

Although Aetna's failure to meet any part of the *Davila* test requires that we reverse the district court's ruling, we briefly address why Aetna has failed to satisfy the remaining requirements as well. Under the *Davila* test, we next must determine "whether the *actual claim* that [McCulloch] asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Montefiore*, 642 F.3d at 328. A colorable ERISA claim exists when the claim "implicates coverage and benefit determinations as set forth by the terms of the ERISA benefit plan." *Id.* at 325. On appeal, Aetna argues that McCulloch's claim "goes to the heart of administration of the Plan and necessarily implicates the patient's assigned right to payment under the Plan." Appellees' Br. at 26. We disagree and conclude that the actual claim asserted here cannot be construed as a colorable ERISA claim for benefits.

In *Montefiore,* we determined that the "in-network" hospital provider's suit against the ERISA plan, seeking reimbursement for medical services that the hospital had provided to beneficiaries of the plan, were "colorable claims for benefits pursuant to §

502(a)(1)(B)." *Id.* The hospital had entered into agreements with preferred provider organizations that it would offer medical services to the plan's beneficiaries at certain rates. *Id.* at 326. The preferred provider organizations, in turn, had contracted with the ERISA plan to set reimbursement rates and terms. *Id.* We concluded that the hospital's state-law claims of breach of contract and quasi-contract concerned the hospital's right to be reimbursed as a valid assignee under the ERISA plan and that deciding whether the hospital should be reimbursed would implicate the plan's coverage and benefits determinations. *Id.* at 331.

The instant case differs from *Montefiore* for several reasons. First, because McCulloch is not a valid assignee and has no plan-related relationship with Aetna, the benefits under the health care plan belong to the patient, not to McCulloch. The health care plan simply provides the context for McCulloch's claim—if no plan had existed, McCulloch's office would not have called Aetna to inquire about the patient's coverage and Aetna likely would not have made such representations.

Second, unlike the contract and quasi-contract claims at issue in *Montefiore,* McCulloch's promissory-estoppel claim does not depend on the specific terms of the relevant health care plan or on Aetna's determination of coverage or benefits pursuant to those terms. The Aetna representative's statements to McCulloch may have been a mere summary of the patient's health care plan and the coverage and benefits that would apply to an "out-of-network" provider.[5] But McCulloch's claim rests on whether Aetna promised to reimburse him for seventy percent of the UCR rate, whether he reasonably and foreseeably relied on that promise, and whether he suffered a resulting injury.[6] The claim does not implicate the actual coverage terms of the health care plan or require a determination as to whether those terms were properly applied by Aetna. *See Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 61 (2d Cir. 2010) (finding promissory-estoppel claim not preempted by ERISA where, *inter*

---

[5] The health care plan, for example, covers seventy percent of an out-of-network provider's surgical procedures after a calendar year deductible.

[6] We note that Aetna made two payments to McCulloch and it does not contest that it had a legal duty to make these payments.

*alia*, the claim's "resolution does not require a court to review the propriety of an administrator's or employer's determination of benefits under such a plan"); *see also Wurtz*, 761 F.3d at 242 (finding state-law claim not preempted because "the terms of plaintiffs' ERISA plans are irrelevant to their claims"); *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 598 (7th Cir. 2008) (finding action arising from insurer's "alleged misrepresentations made . . . in response to [provider's] inquiry" was not an action "to recover benefits due to [a patient] under the terms of his plan, to enforce [a patient's] rights under the terms of the plan, or to clarify [a patient's] rights to future benefits under the terms of the plan"); *DaPonte v. Manfredi Motors, Inc.*, 157 F. App'x 328, 331 (2d Cir. 2005) (summary order) (finding fraudulent-misrepresentation claim not completely preempted where "neither the existence of an ERISA plan nor the interpretation of any such plan's terms is material" to the claim).

Thus, because McCulloch's promissory-estoppel claim does not implicate the terms of the plan—and instead is based on the

Aetna representative's oral statements (regardless of whether those statements accurately represent the plan's terms)—McCulloch has not alleged a colorable claim for benefits pursuant to § 502(a)(1)(B).

### III.    *Davila*, Prong 2

Finally, we proceed to the second prong of the *Davila* test. "Under *Davila*, a claim is completely preempted only if 'there is no other independent legal duty that is implicated by [the] defendant's actions.'   The key words here are 'other' and 'independent.'" *Montefiore*, 642 F.3d at 332 (quoting *Davila*, 542 U.S. at 210); *see also id.* at 328 (noting claim fails to satisfy second prong of *Davila* test where it "*could* have been brought under ERISA, but *also* rests on '[an]other independent legal duty that is implicated by [the] defendant's actions'" (citation omitted)).   Aetna argues that its "only duty arises out of the terms and conditions of" the ERISA plan and that our decision in *Montefiore* "squarely foreclose[s]" that an independent duty may arise from a provider's conversation with an insurer to confirm a plan's coverage.  Appellees' Br. at 31.

We conclude that any legal duty Aetna has to reimburse McCulloch is independent and distinct from its obligations under the patient's plan. McCulloch's promissory-estoppel claim against Aetna arises not from an alleged violation of some right contained in the plan, but rather from a freestanding state-law duty grounded in conceptions of equity and fairness. *See generally* 57 N.Y. JUR. 2D *Estoppel, Ratification, and Waiver* § 51. Aetna is correct that, in *Montefiore*, we found that an insurer's statements in response to a provider's phone inquiry about plan coverage did not create a "sufficiently *independent* duty." *Montefiore*, 642 F.3d at 332. In making this determination, however, we noted that the "pre-approval process [of calling the insurer] was *expressly required by the terms of the Plan itself* and is therefore inextricably intertwined with the interpretation of Plan coverage and benefits." *Id*. We did not, as Aetna argues and the district court found, establish a *per se* rule that pre-approval calls with an insurer could not give rise to an independent legal duty.

Here, unlike in *Montefiore*, McCulloch's phone call with Aetna was not in furtherance of an ERISA plan.  McCulloch was not a valid assignee of the plan, he had no preexisting relationship with Aetna, and he was not required by the plan to pre-approve coverage for the surgeries that he performed.[7]  Instead, McCulloch called Aetna for his own benefit to decide whether he would accept or reject a potential patient who sought his out-of-network services. McCulloch's conversation with Aetna, therefore, is not governed by the plan's terms or "inextricably intertwined" with an interpretation of the plan's coverage and benefits.  *Id.* at 332.

*Franciscan Skemp Healthcare, Inc. v. Central States Joint Board Health & Welfare Trust Fund* is illustrative.  *See* 538 F.3d at 594.  In that case, the health care provider called the plan administrator "to verify [its] coverage of [a particular patient] and the relevant services" before providing medical services.  *Id.* at 596.  A plan

---

[7] Although the plan states that the insured is "responsible for obtaining the necessary precertification from Aetna prior to receiving services from an out-of-network provider," it does not require an out-of-network provider to make a pre-approval call. App'x at 89.

representative "made oral representations that they were covered," and the provider treated the patient. *Id.* The Seventh Circuit found that the provider's state-law claims of negligent misrepresentation and estoppel, based on "alleged shortcomings in the communications" between the provider and insurer, did not duplicate, supplement, or supplant the ERISA exclusive remedy. *Id.* at 598-601. The court made such a determination in part because these claims were not brought by the plaintiff "as a beneficiary, nor [as a party] standing in the shoes of a beneficiary" and the plaintiff was not "arguing about plan terms" or "seeking to recover plan benefits." *Id.* at 601; *see also Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009) (finding provider's state-law claims based on oral contract not completely preempted where claims "are in no way based on an obligation under an ERISA plan, and . . . would exist whether or not an ERISA plan existed"); *cf. Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 532 (5th Cir. 2009) (finding independent obligation existed under a contract between provider and insurer and noting provider's state-law

claim's "mere reference to or consultation of an ERISA plan" does not mean such claims "duplicate, supplement, or supplant ERISA"); *cf. Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 23 (2d Cir. 1996) (finding, in context of § 514, state-law fraud claim not preempted by ERISA where "the essence of the plaintiffs' . . . claim does not rely on the . . . plan's operation or management").

For similar reasons, McCulloch's promissory-estoppel claim is not completely preempted by ERISA. McCulloch does not seek to enforce the patient's right to reimbursement. He is suing in his own right pursuant to an independent obligation. In other words, this is simply a suit between a third-party provider and an insurer based on the insurer's independent promise. *See Stevenson*, 609 F.3d at 60 (finding promissory-estoppel claim not preempted by ERISA where defendant's promise to insured gave rise to legal liability, not defendant's obligations under ERISA plan).[8]

---

[8] Aetna relies on *Devlin v. Transportation Communication International Union*, 173 F.3d 94, 102 (2d Cir. 1999) in support of its contention that "state law promissory estoppel claims are not immune from ERISA preemption." Appellees' Br. at 32-33. This case is inapposite. There, we affirmed the district court's

In sum, we conclude that because any legal duty Aetna has to reimburse McCulloch is independent and distinct from its obligations under the patient's plan, Aetna has failed to satisfy the second prong of the *Davila* test.

## **CONCLUSION**

Because we find that ERISA does not preempt McCulloch's state-law promissory-estoppel claim, we VACATE the district court's orders denying McCulloch's motion to remand and dismissing McCulloch's complaint. We REMAND this action to the district court with instructions to remand the case to New York state court.

---

determination that a promissory-estoppel claim could not be pursued by the beneficiaries and participants of a heath care plan—not a third-party health care provider—under ERISA § 514. *Id.* at 97, 101. We did not address whether such an action would be completely preempted under ERISA § 502, and we affirmed the district court's determination in part because we found that plaintiffs had not presented "extraordinary circumstances" to pursue both an ERISA claim and a claim for promissory estoppel. *Id.* at 102.